JOSE M. ALBUQUERQUE *v.* JOSEPH
ALBUQUERQUE ET AL.
(13973)

Dupont, C. J., and Heiman and Spear, Js.

Argued April 1—officially released July 23, 1996

*Thomas P. Heslin,* for the appellant (substitute plaintiff).

*Marc P. Mercier,* for the appellees (defendants).

SPEAR, J. The substitute plaintiff,[1] Anthony Albuquerque, who is the executor of the estate of his father, the named plaintiff, Jose M. Albuquerque (decedent), appeals from the trial court judgment in favor of the defendants. The complaint alleges that the defendant Joseph Albuquerque (Joseph) misused his position of trust and confidence to gain access to and to deplete the assets of the decedent and, thereafter, fraudulently conveyed certain property to his wife, the defendant Julia Albuquerque (Julia). On appeal, the plaintiff asserts that the trial court improperly (1) found that no confidential relationship existed between the decedent and Joseph, (2) imposed on the plaintiff the burden of proving that Joseph wrongfully appropriated the decedent's assets, (3) found that Joseph was a natural object of the decedent's bounty and presumed a donative intent on the part of the decedent, (4) applied the clean hands doctrine to the plaintiff, and (5) failed to set aside the conveyance of certain property by Joseph to Julia. We affirm the judgment of the trial court.

The trial court found the following facts. The decedent and his wife lived in Rhode Island until 1982 when their house was taken by eminent domain. They moved to Middlefield, Connecticut to live with their grandson, Joseph, in a house that was purchased, in part, with a gift of approximately $68,000 from the decedent. After the decedent made the gift, his estate consisted of approximately $100,000 plus a one-third interest in the Middlefield property. Title to the Middlefield property

---

[1] This action was commenced by Jose M. Albuquerque. After his death, his son, Anthony Albuquerque, became executor of his estate and was substituted as plaintiff. We refer in this opinion to the executor as the plaintiff.

was held jointly in survivorship by the decedent, his wife and Joseph.[2]

After the decedent's wife died in 1987, the decedent continued to live with Joseph until late 1989, when he went to Florida with the plaintiff. The trip was made with little or no notice and was expected to be of short duration, but the decedent remained with his son in Florida until he died in 1993. On February 5, 1990, approximately two months after he arrived in Florida, the decedent executed a new will leaving his entire estate to the plaintiff, thereby revoking his previous will that had left his entire estate to Joseph and his sister, the decedent's granddaughter, Doreen Miano.

When the decedent left Connecticut, his estate consisted of only a $7000 bank account that eventually was withdrawn by the plaintiff. While the decedent was in Florida, the plaintiff, without the services of a lawyer, settled a personal injury case for his father in the amount of $142,000 for a December, 1990 automobile accident, and used the entire $142,000 for his own benefit.

Prior to his death, the decedent instituted this action against the defendants alleging breach of a fiduciary relationship, conversion, fraud and a fraudulent conveyance of real estate. Other facts will be developed as the issues require.

The trial court found for the defendants on all issues and this appeal followed.

I

The plaintiff first claims that the trial court's finding that there was no confidential fiduciary relationship

---

[2] The decedent, after his wife's death, transferred his interest in the Middlefield property to Joseph. The plaintiff attacks this transfer as one induced by fraud or in breach of a confidential relationship.

between the decedent and Joseph was clearly erroneous.[3]

The plaintiff relies solely on *Dunham* v. *Dunham*, 204 Conn. 303, 528 A.2d 1123 (1987), in support of this claim. In *Dunham*, our Supreme Court upheld the trial court's instruction that provided: " '[I]f the plaintiff has proved . . . that there was a special relationship of trust and confidence and the likelihood of the exercise of personal influence and control such that one would expect of the other fair dealing and mutual consideration, there can be a presumption of fraud arising out of that relationship. That's the fiduciary or confidential relationship.' " Id., 321.

"A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interest of the other. . . . The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." (Citations omitted.) Id., 323.

Whether such a confidential relationship exists is a factual question for the trial court. "To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation

---

[3] The plaintiff asserts that Joseph and his sister were appointed conservators of the person of the decedent. Although the trial court made no such finding, Joseph concedes in his brief that he and his sister were appointed conservators of the decedent's person in 1986. The plaintiff does not argue that that appointment created the confidential relationship that Joseph allegedly breached.

marks omitted.) *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 14–15, 664 A.2d 719 (1995). "We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." (Internal quotation marks omitted.) *Larson* v. *Jacobson*, 38 Conn. App. 186, 189, 659 A.2d 753 (1995).

The trial court found that "although there existed a close personal relationship between the decedent and [Joseph], this relationship did not give rise to a superiority and power of influence in the defendant over his grandfather." The trial court further found that the decedent was "in control of his faculties and capable of managing his own affairs, including his bank deposits, with a degree of self-reliance and independence." Our review of the evidence shows that the trial court's factual conclusions are well supported. We note in particular that much of the plaintiff's evidence was his testimony based on what he claimed were complaints made to him by the decedent while the decedent lived with him in Florida. The plaintiff also introduced into evidence a videotape of the decedent taken in Florida that was arranged by the plaintiff. On the videotape, the decedent answered questions posed by his attorney that alleged that Joseph wrongfully took his money and property. Joseph offered evidence that he had no control over the decedent's affairs but that he simply followed the decedent's orders with respect to making transactions. Joseph testified that the decedent made gifts to him, including the $68,000 that was used to purchase the Middlefield property.

Credibility of witnesses is a matter for the trier of fact and not this court. *Westport Taxi Service, Inc.* v. *Westport Transit District*, supra, 235 Conn. 14. We do

not substitute our judgment for that of the trial court simply because we might have concluded otherwise on the evidence. *Larson* v. *Jacobson*, supra, 38 Conn. App. 189.

The trial court could have properly concluded as it did by finding that the plaintiff's evidence was not credible or that the defendant's evidence was worthy of belief. This is especially so given the advanced age of the decedent, his failing health at the time of the videotaped statement, the lack of any cross-examination of the decedent's statement and the ofttimes leading nature of many of the questions. We conclude that the trial court's finding that the plaintiff failed to establish a confidential relationship was not clearly erroneous.

## II

The plaintiff next claims that Joseph should have had the burden of proving that his transactions with his grandfather were proper and not in breach of a confidential relationship. The plaintiff correctly asserts that *Hieble* v. *Hieble*, 164 Conn. 56, 62–63, 316 A.2d 777 (1972), stands for the proposition that "where a confidential relationship has been established, there is clear authority that the burden of proof rests on the party denying the existence of a trust—and then, by clear and convincing evidence to negate such a trust."

Because the trial court's finding that no such confidential relationship existed was not clearly erroneous, the trial court was not required to allocate the burden of proof.

## III

The plaintiff also asserts that the trial court improperly found that Joseph was a natural object of the decedent's bounty and, therefore, improperly presumed a donative intent by the decedent with respect to the

decedent's transfers to Joseph. The plaintiff asserts that, as the decedent's son, he was the natural object of the decedent's bounty because he would inherit the decedent's estate pursuant to the laws of intestate succession.

The trial court found that the decedent was a loving and generous man who had a very close and loving relationship with Joseph. The trial court also found that the decedent had "a serious falling out with his son" when the plaintiff attempted to have himself involuntarily appointed conservator of his father's estate in 1982. The application process emotionally scarred the decedent and Joseph. There was evidence that the decedent had helped the plaintiff purchase several houses and had helped the plaintiff's brother purchase a house. There was also evidence that the decedent wanted to help Joseph purchase a house as he had helped his sons. In light of this evidence, we cannot conclude that the trial court's finding that the transfers to the defendant were not induced by fraud, but were instead gifts, is clearly erroneous.

The trial court's finding that the transfers were gifts is amply supported by the evidence, even without considering whether Joseph was a natural object of the decedent's bounty with the attendant presumption of donative intent. A discussion of who could have properly been considered the natural object of the decedent's bounty would, therefore, be unnecessary.

## IV

The plaintiff next asserts that the trial court improperly applied the clean hands doctrine to the plaintiff's claims. The assertion rests on the following language in the trial court's memorandum of decision: "Moreover, the plaintiff's complete control of his father's finances for more than three years while he lived in Florida, including a questionable gift of $142,000 by a man more

than ninety years old and in failing health tends to implicate the unclean hands doctrine when one evaluates the merits of the plaintiff's claims."

The trial court made this statement only *after* concluding that the defendant had not converted the assets of his grandfather for his own use and benefit and that the $68,000 used to purchase the Middlefield house was a gift from the decedent. In addition, the court found no fraud on the part of Joseph. Thus, it appears that the court did not rely on the clean hands doctrine in reaching its conclusions. The statement, at best, would make the opinion ambiguous. The plaintiff failed to seek an articulation with respect to the clean hands statement and "we read an ambiguous record, in the absence of a motion for articulation, to support rather than undermine the judgment." *Water Street Associates Ltd. Partnership* v. *Innopak Plastics Corp.*, 230 Conn. 764, 773, 646 A.2d 790 (1994).

V

The plaintiff's last claim is that on December 1, 1989, Joseph acquired property at 44 Hopyard Road in East Haddam and created a survivorship interest in that property in his wife, Julia, for the purpose of defrauding the plaintiff.

"The party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations; or (2) that the conveyance was made with a fraudulent intent in which the grantee participated. . . . Whether the conveyance in question was fraudulent is purely a question of fact. . . . Fraudulent intent must be proved, if at all, by clear, precise and unequivocal evidence. . . . This standard of proof applies to intra-familial conveyances." (Citations omitted; internal

quotation marks omitted.) *Watson* v. *Watson*, 221 Conn. 698, 707, 607 A.2d 383 (1992).

The trial court found as a fact that "there is no evidence that the creation of a joint survivorship interest in his wife rendered [Joseph] unable to meet his obligations, or that the former as grantee thereof, participated in a fraudulent scheme." Because this finding of fact is not clearly erroneous, the plaintiff cannot prevail on this claim.

The judgment is affirmed.[4]

In this opinion the other judges concurred.

---

[4] The defendants claimed in oral argument that they filed a cross appeal with respect to their claim that the trial court improperly admitted a videotaped statement of the decedent. Although the defendants addressed that issue in their brief, we find no cross appeal in the record. Even if there were such a cross appeal, there would be no need for us to resolve the issue because we affirm the judgment of the trial court on the appeal.