[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION ON MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT
 FACTS
All facts are adapted as set forth in the amended complaint. Leisure Resort Technology, Inc. Leisure Resort), the plaintiff, is a dissolved corporation. It continues to operate, however, for liquidation and winding up purposes. Lee R. Tyrol serves as the president of the plaintiff company.
In November of 1992, the Mohegan Tribe elected Tyrol to the position of Director of reservation Development beginning Tyrol's association with the Mohegan Tribe. The Mohegan Tribe and Tyrol later entered into an agreement to develop a destination resort and gaming casino.
On January 20, 1993, the Mohegan Tribe and Tyrol, acting on behalf of the not-yet-formed Trading Cove Associates (Trading Cove), entered into a second development agreement, whereby Trading Cove was to construct and CT Page 12565 manage what would become the Mohegan Sun Casino. By July 27, 1993, the plaintiff company along with Slavik Suites, Inc., LMW Investments, Inc. and RJH Development Corp. formed Trading Cove, a general partnership.
On September 21, 1994, the partners of Trading Cove and Sun Cove Ltd. made an agreement to transfer fifty percent interest in Trading Cove to Sun Cove. On February 3, 1995, the plaintiff and Sun Cove then agreed that the Leisure Resort would relinquish its five percent interest in Trading Cove for a five percent "beneficial interest." This beneficial interest entitled the plaintiff to an interest in profit and loss distributions of excess cash and distributions of the organizational and administrative fees relating to the partnership business with the Mohegan Tribe. Subsequently, on August 30, 1995, the Mohegan Tribe contracted to have Trading Cove operate, manage and market the Mohegan Sun Casino for seven years.
In the fall of 1996, Waterford Gaming, LLC acquired a fifty percent partnership interest in Trading Cove. As a result of the purchase, Sun Cove and Waterford Gaming became the only partners in Trading Cove.
The plaintiff company filed a lawsuit against Trading Cove, Waterford Gaming, LMW Investments, Slavik Suites and RJH Development Corp. on August 6, 1997. In January, 1997, pursuant to settlement, the plaintiff relinquished its five percent beneficial interest to Waterford Gaming and agreed to a stipulation of dismissal with prejudice.
On February 7, 1997, Trading Cove and the Mohegan Tribe finalized an agreement to exchange Trading Cove's rights to manage the Sun Casino in exchange for five percent of its gross revenues. Trading Cove would receive these gross revenues for fourteen years, commencing January 1, 2000. Trading Cove also agreed to oversee and plan an expansion project for the Sun Casino. Len Wolman, the president of LMW Investments and vice-president of Slavik Suites, signed these agreements on the behalf of Waterford Gaming.
The plaintiff company brought this present lawsuit on January 7, 2000, against Trading Cove, Waterford Gaming, LMW Investments, Slavik Suites, Waterford Group, Leonard Wolman and Mark Wolman. The plaintiff company asserts in its first count that the defendants breached fiduciary duties that they owed it. In the second count it alleges that they made fraudulent non-disclosures to it. The third count alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA). Finally, the fourth count alleges that they have been unjustly enriched.
The defendants have responded by timely filing a motion to strike and filing a motion for summary judgment on February 29, 2000. The plaintiff CT Page 12566 filed its response on March 31, 2000. Both parties have supplemented their memorandums.
 DISCUSSION I
The defendants collectively have brought a motion to strike three of the four counts of the amended complaint. Also, the defendants wish to strike part of the prayer for relief in regard to an accounting and opening their books to the plaintiff company.
 A
"A motion to strike challenges the legal sufficiency of a pleading."Mingachos v. CBS. Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "[I]t admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Id. A court "must . . . construe the complaint in the manner most favorable to sustaining its legal sufficiency." Internal quotation marks omitted.) Sherwood v.Danbury Hospital, 252 Conn. 193, 212-13, 746 Ad.2d 730 (2000). "In ruling on a motion to strike the trial court is limited to considering the grounds specified in the motion." Meredith v. Police Commission,182 Conn. 138, 140, 438 A.2d 27 (1980).
By bringing its motion to strike, the defendants argue that the plaintiff company has not alleged sufficient facts to make out a legal claim for breach of fiduciary duty, fraudulent nondisclosure and violation of CUTPA, Connecticut General Statutes § 42-110A, et. seq. specifically, the defendants argue that the plaintiff company has not sufficiently pled facts to sustain an allegation of the existence of a fiduciary duty or the ability to pierce the corporate veil. Furthermore, the defendants then go on to argue that because CUTPA does not apply to intrabusiness affairs, the plaintiff company has not properly alleged a violation of CUTPA. Finally, he defendants argue that they do not have a duty to make an accounting to the plaintiff company r open their books to the plaintiff company.
 B PIERCING THE CORPORATE VEIL
The plaintiff company sues Leonard and Mark Wolman as directors of Waterford Gaming and Slavik Suites, Inc. and LMW Investments as members of the Waterford Gaming.[1] The plaintiff seeks to pierce the corporate veil, because all four actors were members or directors of Waterford CT Page 12567 Gaming, a limited liability company and were alleged to be acting as members or directors when committing the alleged wrongs. Defendants bring their motion to strike, asking that the court strike the plaintiffs "alter ego claims."
In its amended revised complaint, the plaintiff alleges facts to pierce the corporate veil in all four counts. The defendants want to strike all "alter-ego claims" of the plaintiff, essentially paragraphs 33 through 35, which are incorporated in all four counts.
"[W]here individual paragraphs standing alone do not purport to state a cause of action, a motion to strike cannot be used to attack the legal sufficiency of those paragraphs. A single paragraph or paragraphs can only be attacked for insufficiency when a cause of action is therein attempted to be stated." Dowd v. D'addeo, Superior Court, judicial district of Middlesex at Middletown, Docket No. 088165 (January 13, 2000, Arena, J.). This court finds that paragraphs 33 through 35 do state a separate cause of action against the Wolmans, LMW Investments and Slavik Suites. Therefore, the court must decide whether the plaintiff has alleged sufficient facts to pierce the corporate veil of Waterford Gaming.
"The concept of piercing the corporate veil is equitable in nature and courts should pierce the corporate veil only under `exceptional circumstances.'" Davenport v. Quinn, 53 Conn. App. 282, 301, 730 A.2d 1184
(1999), citing Angelo Tomasso, Inc. v. Armor Construction and Paving,Inc., 187 Conn. 544, 555, 447 A.2d 406 (1982). The Supreme Court has approved two tests that may pierce the corporate veil: the instrumentality rule and the identity rule. See id., 300.
"The instrumentality rule requires, in any case but an express agency, proof of three elements: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; (2) that such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiffs legal rights; and (3) that the aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. . . . The identity rule has been stated as follows: If a plaintiff can show that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted CT Page 12568 by one corporation for the benefit of the whole enterprise." (Emphasis in original; internal quotation marks omitted.) Id., 300-01.
In this case, the plaintiff company has broadly alleged that the four individual defendants have "completely controlled and dominated the finances, policy and business practice of Waterford Gaming in respect to the negotiation of and execution of the Settlement Agreement such that Waterford Gaming was their mere instrumentality and had, at the time, no separate mind, will or existence of its own."
While presenting the legal conclusion that these four actors "dominated and controlled" Waterford Gaming, the pleading does not allege any facts that may, if proven true, demonstrate that the court should pierce the corporate veil. "A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems v. BOC Group, Inc., 224 Conn. 210,215, 618 A.2d 25 (1992). Therefore, because the plaintiff company has alleged mere conclusions in its allegation to pierce the corporate veil, the motion to strike is granted as paragraphs 33 through 35 of all four counts.
 C VIOLATION OF CUTPA
The amended complaint in the third count also alleges violation of CUTPA for "deceptive, improper, oppressive and unscrupulous acts." Because the motion to strike is granted as to paragraphs 33 through 35 of each count, the court will address the motion to strike only with respect to Trading Cove, Waterford Gaming and Waterford Group.
Connecticut General Statutes § 42-110b(a) provides "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." A "person," under CUTPA, is defined as "a natural person, corporation, limited liability company, trust, partnership, incorporated or unincorporated association, and any other legal entity." General Statutes § 42-110a(3).
The plaintiff company in this case desires to apply CUTPA to intra-business affairs. The Connecticut appellate courts have not decided whether intra-business affairs implicate "trade and commerce" as defined by CUTPA and the Superior Courts are currently split on the issue. The majority of the Superior Courts, however, do not apply CUTPA to intra-business affairs. See, e.g., August v. Moran, judicial district of Hartford/New Britain at Hartford, Docket No. 538682 (March 18, 1996,Wagner, J.); Brunette v. Bristol Savings Bank, Superior Court, judicial CT Page 12569 district of Hartford/New Britain at New Britain, Docket No. 453957 (April 7, 1995, Holzberg, J.); Lapuk v. Simons, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 704542 (January 3, 1995, Corradino, J.); Heller v. North American Rock Co., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 093432 (February 6, 1991, Lewis, J.), contra, Visconti v. Cotsinger,
Superior Court, judicial district of Hartford/New Britain at New Britain, Docket No. 435872 (March 20, 1990, Allen, S.J.) (1 Conn L. Rptr. 386).
Some of the cases, upon deciding whether CUTPA will apply to intra-business affairs, have used Massachusetts and federal case law to decide the issue. Massachusetts, which has a statute similar to CUTPA, stated that "protections were extended to persons engaged in trade or commerce in business transactions with other persons also engaged in trade or commerce. The development of the statute, therefore, suggests that the unfair or deceptive acts or practices prohibited are those that may arise in dealings between discrete, independent business entities, and not those that may occur within a single company." Manning v.Zuckerman, 444 N.E.2d 1262, 1265 (Mass. 1985). This interpretation is in line with interpretations of the Federal Trade Commission Act. See FTCv. A.P.W. Paper Co., 328 U.S. 193, 199 (1945); FTC v. Ralcidam Co.,283 U.S. 643, 647-48 (1930). Because the interpretation of CUTPA is guided by interpretations of the Federal Trade Commission Act, see C.G.S. § 42-110b (b), and because of the persuasive authority from our Superior Courts decisions and from Massachusetts, this court finds that CUTPA does not apply to intra-business affairs. Therefore, the motion to strike the CUTPA claim is granted.
 D BREACH OF FIDUCIARY DUTIES AND FRAUDULENT NON-DISCLOSURE
The defendants next ask the court to strike the plaintiffs first and second counts regarding the breach of fiduciary duty and fraudulent non-disclosure. Because the question of whether there was a breach of fiduciary duty sufficiently alleged and whether the defendants committed fraudulent non-disclosure rely on whether a fiduciary duty existed, these two counts will be dealt with together.
To allege fraudulent non-disclosure, the plaintiff must allege the elements of fraud as expanded by the fraudulent non-disclosure. "Fraud by nondisclosure . . . involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there is a duty to speak." (Citations omitted; internal quotation marks omitted.) Pospisil v.CT Page 12570Pospisil, 59 Conn. App. 446, 450 ___ A.2d ___ (2000). There is a duty to speak whenever a fiduciary makes a contract with a beneficiary. SeePacelli Brothers Transportation, Inc. v. Pacelli, 189 Conn. 401, 407-08,456 A.2d 325 (1983).
In this case, the plaintiff company has alleged that the defendants were its fiduciaries. To survive this motion to strike, the plaintiff company must allege sufficient facts to demonstrate that the defendants owed it a fiduciary duty, there was a duty to disclose the agreement between themselves and the Mohegan Tribe and by their non-disclosure, the defendants breached their fiduciary duties and committed fraudulent disclosure.
To begin, this court must first determine what constitutes a fiduciary. "Rather than attempt to define a fiduciary relationship in precise detail and in such a manner to exclude new situations, [the Supreme Court has] instead chosen to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence on the other." (Internal quotation marks omitted.) Dunham v. Dunham, 204 Conn. 303, 320, 528 A.2d 1123
(1987). Because of this policy, the existence of a fiduciary relationship becomes a question of fact. See Albuquerque v. Albuquerque,42 Conn. App. 284, 287, 679 A.2d 962 (1996).
"It is inappropriate to decide a question of fact on a motion to strike." Esposito v. Connecticut College, Superior Court, judicial district of New London at New London, Docket No. 543055 (February 10, 1999, Mihalakos, J.). It is appropriate, however, for this court to decide whether the plaintiff company has pled sufficient facts to allege a fiduciary relationship. See Facchim v. Miller, Superior Court, judicial district of Hartford at Hartford, Docket No. 587686 (January 31, 2000,Wagner, JT.R.).
In the amended complaint, the plaintiff company has alleged that in exchange for its partnership interest, the defendants gave it a beneficial interest in the profits, loss distributions of excess cash and organizational and administrative fees of Trading Cove. The plaintiff company alleges that this beneficial interest created a special relationship between the plaintiff company and the defendants. The complaint states that as a result of the 1997 settlement it gave up its beneficial interest and agreed to a settlement of all claims. Plaintiff company alleges, however, that it was induced to make such a deal because it was not notified or informed of the ongoing negotiations between the defendants and the Mohegan Tribe, and, as a result of this nondisclosure, the plaintiff company could not properly value its beneficial interest. CT Page 12571
This court finds that the plaintiff company has pled sufficient facts to allege breach of fiduciary duty and fraudulent non-disclosure. Plaintiff company has alleged that it confided a trust in the defendants who allegedly had resulting superiority and influence when it entered into the beneficial interest agreement. It has also alleged resulting superiority because the defendants were partners or partnerships while it was an interest holder and it had a pre-existing relationship with them before and while the plaintiff company held its beneficial interest. This alleges a fiduciary relationship, creating a fiduciary and, thus, a duty to speak. Therefore, regarding the first and second counts of the amended complaint, the motion to strike fails.
 E Accounting of Partnership Records
In the amended complaint, the plaintiff company requests the remedy of an accounting "of all books and records" of the defendants. The defendants have made a motion to strike this part of the prayer for relief.
Because the defendants were partnerships formed before July 1, 1999, the current Uniform Partnership Act does not apply to the defendants. See General Statutes § 34-398 (a)(1). Therefore, to decide whether the plaintiff company may request an accounting of partnership books and records, this court will look to the 1961 Uniform Partnership Act (1961 UPA.)
Under the 1961 UPA, the statute provides that "[a]ny partner shall have the right to a formal account as to partnership affairs: (a) If he is wrongfully excluded from the partnership business or possession of its property by his copartners, (b) if the right exists under the terms of any agreement . . . (d) whenever other circumstances render it just and reasonable." General Statutes § 34-60 (1994). The right to an accounting under the statute is limited to a partner.
The plaintiff company has asked for an accounting based upon its status as a beneficial owner of the defendants. The court has been unable to find, and the parties have not cited, any case that allows an entity to request an accounting based upon any status other than as a partner or former partner. It is clear that the statute intended only for partners to have access to partnership books. Therefore, the paragraph in the prayer for relief asking for an accounting of partnership records of the defendants is stricken.
CT Page 12572 II
The defendants also have made a motion for summary judgment. Because the motion to strike has eliminated all the counts except for the first and second counts alleging breach of fiduciary duty and fraudulent non-disclosure, this opinion relates only to those two counts.
"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Brackets in original; internal quotation marks omitted). Community Action forGreater Middlesex County, Inc. v. American Alliance Ins. Co.,254 Conn. 387, 397, ___ A.2d ___ (2000).
The party seeking summary judgment has the burden to show the nonexistence of any genuine issue of material fact. See id., 397-98. If the movant has shown the nonexistence of a material fact, the non-movant "must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Brackets in original; internal quotation marks omitted.) Maffucci v.Royal Park Ltd. Partnership, 243 Conn. 552, 554-55, 707 A.2d 15 (1988).
The defendants argue that the court should grant summary judgment because (1) the release and waiver entered into by the parties on January 6, 1998, (1998 Agreement) bars the plaintiff company from suing the defendants and (2) there is no genuine issue as to any material fact as to whether the defendants were fiduciaries to the plaintiff company.
 A
The defendants claim that no issue of material fact exists as to whether they owed a fiduciary duty to the plaintiff. In Part I above, as discussed, if the defendants did not owe the plaintiff company a fiduciary duty, then it could not have breached any fiduciary duty nor would it then have a duty to speak, thus defeating a claim of fraudulent non-disclosure.
As stated in Part I, whether a fiduciary relationship exists is a CT Page 12573 question of fact and there is no set formula for what will constitute whether two parties are in a fiduciary relationship. See Albuquerque v.Albuquerque, 42 Conn. App. 287. The defendants, however, argue that the plaintiff company was an assignee and, therefore, cannot "interfere in the management or administration of the partnership business or affairs." General Statutes § 34-65 (1994). Whether or not the plaintiff company is an assignee, this court need not decide because, taking the evidence in the light most favorable to the non-movant, a genuine issue of fact still remains as to whether the defendants owed the plaintiff company fiduciary duties.
Even if the plaintiff company was an assignee, it also had a pre-existing relationship with the defendants. While this fact may or may not make it a beneficiary owed fiduciary duties, it does raise a genuine issue of material fact. Therefore, the motion for summary judgment fails because a genuine issue of material fact does exist as to whether the defendants owed the plaintiff company fiduciary duties and this court denies the motion for summary judgment.
 B
The defendants argue that the 1998 Agreement bars the plaintiff from suing them. The agreement provides that "[The plaintiff company], on the one hand, and [the defendants], on the other hand, mutually release and forever discharge one another . . . from any liability, claim, counterclaim, right or cause of action, demand, debt, contract, obligation, damage and expense of any nature whatsover, whether presently known or unknown, relating to or arising out of the [1998 Agreement] or any prior agreement . . ." The defendants argue that because the plaintiff company has received the benefits under this agreement, it may not now renege the agreement by bringing suit.
"[A] release is a contract to which the ordinary rules of contract interpretation apply." (Citations omitted; internal quotation marks omitted.) Hughes v. Carmody, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 127811 (November 13, 1998,Corradino, J.). Therefore, in order to decide whether this settlement between the parties bars the plaintiff company, this court will look to contract law.
In its brief, the defendants cite Young v. Data Switch Corp.,231 Conn. 95, 646 A.2d 852 (1994) and Chohen v. Halloways', Inc.,158 Conn. 395, 260 A.2d 573 (1969) for the proposition that once a party to the contract ratifies it, that party cannot repudiate that contract. These cases, however, discussed rescission of a contract. The plaintiff company does not seek recission. It seeks damages for fraudulent CT Page 12574 non-disclosure and breach of fiduciary duties.
"Fraud in the inducement of a contract ordinarily renders the contract merely voidable at the option of the defrauded party, who also has the choice of affirming the contract and suing for damages." 669 AtlanticStreet v. Atlantic-Rockland Stamford, 43 Conn. App. 113, 130-31 n. 8,682 A.2d 572, cert. denied, 239 Conn. 949, 950, 686 A.2d 126 (1996). "If [the allegedly defrauded party] pursues [suing for damages], the contract remains in force." A. Sangivanni Sons v. F.M. Florvan Co.,158 Conn. 467, 472, 262 A.2d 159 (1969). Though these cases related to other types of contracts, the plaintiffs in Pacelli were allowed to sue for breach of fiduciary duties and fraudulent non-disclosure while not rescinding the contract. See Pacelli Brothers Transportation, Inc. v.Pacelli, 189 Conn. 410.[2]
Because the plaintiff seeks damages rather than rescission, the issue becomes whether a genuine issue of material fact exists as to whether there is fraud. If there is a genuine issue of material as to the existence of fraud, then the motion for summary judgment fails because the plaintiff may sue for damages and the contract will still be valid. Because, as discussed in Part I and Part II, A above, a genuine issue of material fact exists as to whether there was fraud. Therefore, the motion for summary judgment fails.
It is so ordered.
By the court
GORDON