**Maynard and Geneva SHELTRY,**
**Plaintiffs,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA and UnumProvident Corporation, Defendants.**

No. 3:02CV26 (GLG).

United States District Court,
D. Connecticut.

Feb. 19, 2003.

Austin J. McGuigan, Bernard F. Gaffney, Putnam Hutchinson Perry, Rome McGuigan Sabanosh, Hartford, CT, for Maynard Sheltry, Geneva Sheltry.

Kathleen D. Monnes, Alexander G. Filotto, Day, Berry & Howard, Hartford, CT, John A. LoBosco, UnumProvident Corp., Portland, ME, for Unum Life Ins. Co. of America.

Mitchell R. Harris, Kathleen D. Monnes, Alexander G. Filotto, Day, Berry & Howard, Hartford, CT, John A. LoBosco, UnumProvident Corp., Portland, ME, for Unum Provident Corp.

## *OPINION*

GOETTEL, District Judge.

Plaintiffs, Maynard and Geneva Sheltry, have brought this action against defendants, Unum Life Insurance Company of

America ("Unum America") and Unum-Provident Corporation ("UnumProvident"), seeking to hold defendants liable for money stolen from them by Galan I. Newton, an independent insurance broker.[1] Plaintiffs premise their claims of liability on theories of breach of fiduciary duty, negligent supervision, and violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. §§ 42–110a–42–110q, based upon defendants' alleged violation of Connecticut's Unfair Insurance Practices Act ("CUIPA"), Conn. Gen.Stat. §§ 38a–815–38a–832. Defendants have moved for summary judgment [Doc. # 21] on the grounds that (1) plaintiffs' claims are barred by the doctrine of judicial estoppel and (2) that defendants cannot be held liable for Newton's criminal acts. As alternative grounds for summary judgment, defendants assert that (1) plaintiffs' claim for breach of fiduciary duty must fail because they owed no fiduciary duty to plaintiffs; (2) their negligent supervision claim must fail because defendants had no duty to supervise Newton's conduct; and (3) their CUTPA/CUIPA claim must fail because (a) it is based on negligence, which cannot support a CUTPA/CUIPA claim, (b) defendants have no vicarious liability for a CUTPA/CUIPA violation, and (c) plaintiffs have no standing to assert such a claim.

For the reasons set forth below, the motion for summary judgment will be granted in part and denied in part.

### SUMMARY JUDGMENT STANDARD

The standard for reviewing summary judgment motions is well-established. A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The burden of establishing that there is no genuine factual dispute rests with the moving party. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.1994). In ruling on a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in favor of plaintiffs, as the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

### FACTS

#### Newton's Theft of Money from Plaintiffs

Galan I. Newton, principal of Newton Insurance Consultants, in South Windsor, Connecticut, was an independent insurance broker, licensed by the State of Connecticut to sell insurance products for thirteen different insurance companies. (Lee Aff. at ¶ 6.) Plaintiffs had a longstanding relationship with Newton, dating back to 1984, when he was with Banker's Life Insurance Company. (M. & G. Sheltry 1/4/00 Affs. at ¶ 4.) Over the years, they bought a number of different insurance policies from him.

---

**1.** Our use of the phrase "independent insurance broker" is in no way dispositive of the agency issues presented in this case. As discussed *infra*, Newton was licensed by the State to sell various insurance products for thirteen different insurance companies and, as such, was authorized to act as an agent for these companies for purposes of soliciting contracts of insurance for them. *See* Conn. Gen.Stat. § 38a–702(2)(rev. to 2002) and § 38a–782(c)(rev. to 2002).

He would come to their home to discuss the various policies and options with them. Plaintiffs never went to his office. *Id.*

In approximately July of 1999, the plaintiffs were visited in their home by Newton, who told them that it would be to their advantage to cash in an asset-care policy issued by Golden Rule Insurance Company, and to use the proceeds to purchase a long-term care policy with Unum America. *Id.* at ¶ 7. Newton represented to them that the asset-care policy had expensive handling charges and that a similar policy with Unum America would reduce those handling charges by approximately 50%. *Id.* at ¶ 8. He gave them literature that he said was provided by Unum, *id.*, including a Unum folder with his business card on the front. (G. Sheltry Dep. at 26–28.) Mrs. Sheltry understood at the time that there was a relationship between Newton and Unum America—"that he was an agent and was able to sell their insurance." *Id.* at 28. Newton had them fill out a Unum long-term care insurance application form on which a number of sections had been deleted as "N/A," not applicable. (Pls.' Ex. D.) Newton represented to plaintiffs that answers to these questions concerning physicians and medical history were not necessary because it was a replacement policy and Golden Rule would transfer all of their medical records to Unum America. (Pls.' Ex. M, G. Sheltry Dep. at 38, M. Sheltry Dep. at 30–31, 38.) Plaintiffs also signed a replacement letter authorization, terminating their insurance with Golden Rule. (Pls.' Ex. M.) In September, 1999, plaintiffs gave Newton two checks totaling $264,345.29, which were proceeds from the Golden Rule policy, for which Newton gave them receipts. Newton ostensibly this money used to purchase the Unum America policy, which he later delivered to plaintiffs. (M. & G. Sheltry 1/4/00 Affs. at ¶¶ 9–11.) As far as plaintiffs were concerned, they believed that they had purchased an Unum America long-term care policy. (G. Sheltry Dep. at 31–32.)

In December 1999, Newton was arrested for stealing funds from another insurance client. (Pls.' Ex. F.) When plaintiffs read about this in the newspaper, they contacted Unum America in its Maine and Windsor, Connecticut offices and were advised that no policy had been purchased or issued by Unum America in plaintiffs' names. *Id.* at ¶ 13. The ensuing criminal investigation revealed that Newton had stolen hundreds of thousands of dollars from at least thirteen customers over a twelve-year period. In 2000, Newton was convicted of larceny and forgery (Defs.' Ex. F) and is currently serving a sentence of 20 years.

After determining that the policy that Newton had delivered to them was "bogus," plaintiffs sued Newton in Connecticut Superior Court, alleging claims of conversion, unjust enrichment, negligence, breach of fiduciary duty, and violation of CUTPA. (Pls.' Ex. A, *Sheltry v. Newton*, Verified Compl.) Their complaint included the claim that Newton "acted as an insurance agent for the Sheltrys" with respect to the transaction at issue. According to plaintiffs, Newton deposited the funds they tendered to him for the purported purchase of the Unum policy into his personal bank account. *Id.* On July 18, 2000, the Connecticut Superior Court entered a default judgment in favor of plaintiffs against Newton in the amount of $1,370,643.90, consisting of compensatory damages, interest, punitive damages, and attorney's fees. (Defs.' Ex. E, Judgment.) Unable to collect on this judgment from Newton, who remains incarcerated, plaintiffs instituted the instant action against defendants.

### The Defendants and Their Relationship with Newton

UnumProvident is an insurance holding company incorporated under Delaware

law. It does not sell insurance. (Lee Aff. at ¶ 5.) Unum America is an insurance company owned by UnumProvident, incorporated under Maine law. *Id.*

On July 1, 1994, Unum America and Newton entered into a "Broker's Agreement" pursuant to which Newton was authorized to sell certain insurance products of Unum America. (Defs.' Ex. G.) The Agreement provided in relevant part that Unum America authorized Newton,

> subject to the terms and conditions of this Agreement, to solicit and procure applications for insurance policies and annuity contracts with the Company, to collect the initial premium or prepayment of expenses thereon, and to furnish receipts for same on Company-approved forms... Broker shall have no authority to obligate, bind, or otherwise act for the Company except as is expressly granted herein or as may be subsequently granted in writing signed by an officer of the Company.

*Id.* at ¶ 2. Additionally, the Agreement provided that the Broker "shall comply with such Company policies, guidelines and directives as may be issued from time to time." *Id.* at ¶ 4. Further, anything in the Agreement to the contrary notwithstanding, it was agreed that "Broker has no authority to bind the Company by an agreement, representation or promise made by him ... nor to waive or modify any of the terms and conditions of the Company's insurance policies or annuity contracts and related forms or instructions...." *Id.* at ¶ 5(a). The Agreement also contained the disclaimer that

> [n]othing in this Agreement shall be construed to create an employment relationship between broker and the Company.... Broker, as an independent contractor, shall determine the person to solicit for insurance and the time and manner in which to perform the services required to be performed under the terms of this Agreement. Broker hereby acknowledges the status of independent contractor with respect to the Company....

*Id.* at ¶ 12.

Unum then paid a $25 appointment fee to the State of Connecticut to have Newton licensed by the State to sell Unum America life, accident and health insurance products. (Pls.' Ex. F, Lee Dep. at 37.) The Application for the Appointment provided that Unum America "intends to appoint the above applicant [Newton], if duly licensed, to act as its agent for the line(s) of insurance as set forth herein." (Pls.' Ex. F.) Unum America further represented that it had a signed document from Newton indicating that he was applying to the Commissioner of the State of Connecticut "to act within said state as an insurance agent for [Unum America] for the lines of insurance as set forth herein." *Id.*

In the course of Newton's career as an insurance broker, Newton sold only three Unum America individual disability policies. He sold no other Unum America policies. Neither Newton nor the plaintiffs had any relationship or dealings with UnumProvident.

## *DISCUSSION*

### *I. Judicial Estoppel*

Initially, defendants argue that the doctrine of judicial estoppel [2] bars plaintiffs

---

**2.** We note that there is some question as to whether Connecticut recognizes the doctrine of judicial estoppel. *See SKW Real Estate Ltd. v. Mitsubishi Motor Sales of Am., Inc.,* 56 Conn.App. 1, 8, 741 A.2d 4 (1999)("We do not have to determine whether Connecticut recognizes the doctrine of judicial estoppel because there is no factual basis to apply any estoppel principles here."), *cert. denied,* 252 Conn. 931, 746 A.2d 793 (2000).

from taking the position that Newton was defendants' agent, in light of their stated position in their earlier litigation against him that he was their insurance agent.

██ Under the doctrine of judicial estoppel, a party is precluded from advancing contradictory positions in separate legal proceedings. *AXA Marine & Aviation v. Seajet Industries*, 84 F.3d 622, 628 (2d Cir.1996). The doctrine attempts to insure "the sanctity of the oath and the integrity of the judicial process." *Bates v. Long Island R.R.*, 997 F.2d 1028, 1037 (2d Cir.), *cert. denied*, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993). A party invoking judicial estoppel must show that (1) the party against whom judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner. *Id.* at 1038. "[T]here must be a true inconsistency between the statements in the two proceedings. If the statements can be reconciled there is no occasion to apply an estoppel." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72–73 (2d Cir.1997).

██ Plaintiffs in their first suit against Newton stated in their Verified Complaint that "[a]t all times relevant hereto, [Galan I. Newton] acted as an insurance agent for the Plaintiffs." (Verified Comp. at ¶ 3.) Defendants argue that this statement is inconsistent with the position now advanced by plaintiffs that Newton was acting as an agent of Unum America when he stole money from them. Plaintiffs respond that these positions are not mutually exclusive since Newton could have been acting as their insurance agent, as that term is defined by Conn. Gen.Stat. § 38a–702(2), as well as an agent for Unum America.

The difficulty that we have with defendants' position is that there is nothing in the record to indicate that plaintiffs' statement that Newton was their agent was ever adopted by the State Superior Court. *See Mulvaney Mechanical, Inc. v. Sheet Metal Workers*, 288 F.3d 491, 504–05 (2d Cir.2002)("Judicial estoppel is inappropriate without a showing that the prior tribunal adopted the original representations.") In the state court litigation against Newton, plaintiffs asserted claims for conversion, unjust enrichment, negligence, breach of fiduciary duty, and violation of CUTPA. They obtained a default judgment against Newton, which states simply that "liability has been conceded." (Pls.' Ex. E.) There is nothing to indicate on what causes of action liability was conceded. Whether Newton was plaintiffs' agent, as opposed to the agent for Unum America, was irrelevant to most of the legal theories asserted by plaintiffs in their state court complaint. Thus, we cannot find that the state court adopted their statement that he was their agent in any manner whatsoever.

## II. Agency—Actual and Apparent Authority

Defendants next argue that they are entitled to summary judgment as a matter of law on all counts of plaintiffs' complaint because, even assuming that Newton was their agent, he was not acting within the scope of his authority and in furtherance of defendants' business. Focusing on Newton's theft of the premiums from plaintiffs, defendants assert that Newton stole for his benefit alone, unilaterally disregarding defendants' business.

Plaintiffs focus instead on Newtons' acts in soliciting their application for insurance and accepting their premium payment on behalf of Unum America. They respond that, by appointing Newton as their agent to solicit and procure insurance contracts and to accept initial premium payments, defendants should be held liable for the fraud of their agent, acting within the

scope of his actual or apparent authority. At a minimum, plaintiffs assert, there are genuine issues of material fact that make summary judgment inappropriate.

 "[I]t is a general rule of agency law that the principal in an agency relationship is bound by, and liable for, the acts in which his agent engages with authority from the principal and within the scope of the agent's employment." *Maharishi School Vedic Sciences, Inc. v. Connecticut Constitution Associates Ltd. P'ship*, 260 Conn. 598, 606, 799 A.2d 1027 (2002). An insurance company, the same as any principal, is liable for the acts done by one of its agents within the scope of the agent's actual or apparent authority. 43 Am.Jur.2d, *Insurance* § 119 (2002). An insurance company may be civilly liable for an agent's illegal acts, "such as converting the proceeds of a check given to the agent in payment of premiums," if the agent was acting within the actual or apparent scope of his employment or authority. *4 Couch on Insurance* § 56.25 (3d ed.2003).

 An agent's authority may be actual or apparent. *Hallas v. Boehmke and Dobosz, Inc.*, 239 Conn. 658, 674, 686 A.2d 491 (1997). Actual authority exists when an agent's actions are expressly or impliedly authorized by the principal. *Id.; Czarnecki v. Plastics Liquidating Co.*, 179 Conn. 261, 268, 425 A.2d 1289 (1979). "Apparent authority is the semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses." *Tomlinson v. Board of Educ.*, 226

Conn. 704, 734, 629 A.2d 333 (1993). "Apparent authority must be derived not from the acts of the agent but from the acts of his principal. [T]he acts of the principal must be such that (1) the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and (2) in consequence thereof the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority." *Hallas*, 239 Conn. at 674, 686 A.2d 491 (internal citations and quotation marks omitted).

 The Broker's Agreement between Unum America and Newton authorized Newton "to solicit and procure applications for insurance policies, ... [and] to collect the initial premium or prepayment of expenses thereon." Insurance companies are held impliedly to authorize their agent so do what is usual or necessary in the transaction of the insurance business. 43 Am.Jur.2d, *Insurance* § 119. Additionally, the application Unum America filed with the State indicated that it intended to appoint Newton to act as its agent[3] for certain lines of insurance. Newton was licensed by the State of Connecticut to sell certain insurance products for Unum America and actually sold a small number of Unum America policies.

There is also evidence that Newton was in possession of a number of forms and documents bearing the Unum America name and logo, which he used in selling

---

**3.** Section 38a–702(2), Conn. Gen.Stat. (rev. to 2002), defines "insurance agent" as a person ... holding an insurance producer's license ... and a direct appointment in writing, by any insurance company ..., to solicit, negotiate or effect contracts of insurance ... on behalf of such company.... Section 38a–782(c), Conn. Gen.Stat. (rev. to 2002), then provides that "a producer's authority to act as

an agent shall be activated on the date the insurer's authorized licensing representative signs a written appointment form" and the appointment form is sent to the commissioner. The statute further provides that "[a]n insurer shall be responsible for the actions of the producer that relate to such appointment." *Id.*

the Unum policy to plaintiffs. Indeed, plaintiffs testified that they read these materials and relied on them in making the decision to replace their Golden Rule policy with an Unum America policy.

Defendants rely heavily on the case of *A–G Foods, Inc. v. Pepperidge Farm, Inc.*, 216 Conn. 200, 579 A.2d 69 (1990), in which the Connecticut Supreme Court refused to hold Pepperidge Farm vicariously liable under the doctrine of *respondeat superior* for the theft of monies by one of its distributors from the plaintiff, a grocery store customer. There, the distributor, working under a consignment agreement with Pepperidge Farm, fraudulently billed and collected money from the plaintiff, his customer, for bakery products that he never delivered to it. Pepperidge Farm was not aware of this scheme and never received any of the money fraudulently collected. The Court upheld the trial court's finding that the distributor was not acting within the scope of his employment or in furtherance of Pepperidge Farm's interests and, thus, Pepperidge Farm was not vicariously liable for the money stolen from the plaintiff. *Id.* at 210, 579 A.2d 69. The Court, however, never reached the question presented in the instant case of whether Pepperidge Farm could be liable based upon the apparent authority of its agent under the *Restatement (Second) of Agency* § 261 ("A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud.") Finding that this issue had been raised for the first time on appeal, the Court refused to address the merits of plaintiff's argument. *A–G Foods,* 216 Conn. at 212, 579 A.2d 69.

The issue presented in the instant case is more akin to that presented in *Rizza v. Fisher,* No. CV 970574138S, 1999 WL 203739, at *3 (Conn.Super.Mar.23, 1999), in which the plaintiff-insured sought to hold an insurance company liable on an agency theory for the negligent and fraudulent misrepresentations of its insurance agent in the sale and servicing of a fire insurance policy. The insurer denied that individual insurance agent was its agent, but argued that if he was, his acts were not within the scope of his agency. Based upon the existence of an agency-company agreement, in which the individual agreed to act as agent for the insurance company with full power to accept insurance proposals, the court found a question of fact as to whether his conduct could be reasonably contemplated to be within the scope of the agency agreement. Accordingly, the court denied the defendant's motion for summary judgment.

As noted above, for purposes of this particular issue, defendants have asked us to assume that Newton was their agent. We are concerned only with whether there is a genuine issue of material fact as to whether he was acting with actual or apparent authority in soliciting the insurance application from plaintiffs and in receiving the premium for that policy. Based on the record before us, we find that there is sufficient evidence to create a genuine issue of material fact in this regard. Thus, we deny summary judgment to defendants on the asserted ground that Newton lacked actual or apparent authority to act on their behalf.

### III. Plaintiffs' Duty of Inquiry

Defendants argue that, even if we find that Newton was acting as their agent, plaintiffs had a duty to inquire as to whether the acts of Newton were authorized. They assert that a principal is not liable for its agent's unauthorized acts where the party with whom the agent is dealing had reason to know that the agent

was not acting for the principal's benefit. Here, they claim, plaintiffs had a duty to inquire because the transaction was "suspicious on its face." Defendants point to Newton's unauthorized modification of the application in contravention of the express instructions on the application which plaintiffs signed, and his answering critical questions as "not applicable" and changing the policy's benefits.

Plaintiffs reply that all of Newton's acts related to the solicitation of the insurance policy and that he offered reasonable explanations for the changes that were made. Plaintiffs point to the fact that they are elderly and had no special expertise in insurance matters. Newton came to their home, as he had many times before, and encouraged plaintiffs to change their long-term care coverage to a Unum policy, explaining the benefits of this policy over their existing Golden Rule policy. He used an application bearing Unum's trademark and represented that he was licensed to sell Unum products. He gave them brochures explaining the policy he wanted to sell them and offered reasonable explanations as to why certain changes in the application were necessary. He explained that certain information in the application was unnecessary because this was a replacement policy, for which plaintiffs signed a replacement letter authorization terminating their coverage with Golden Rule. He took their premium payments and provided them with receipts. Newton had handled numerous applications for plaintiffs in the past and there had never been any problems. As far as plaintiffs' were concerned, "the application transaction was completely within the norm." (Pls.' Mem. at 22.) Thus, given that they had no indication or suspicion about Newton's improper motive, they had no duty of inquiry. (Pls.' Mem. at 23.)

When the evidence is viewed in the light most favorable to plaintiffs, with all reasonable inferences drawn in their favor, we find genuine issues of material fact as to whether plaintiffs should have been sufficiently suspicious of Newton's improper motives to inquire of Unum America as to Newton's authority to solicit the altered application from them and receive the premium payments for a Unum policy. *See Rizza*, 1999 WL 203739, at *4. Accordingly, we deny summary judgment on that basis.

### IV. Breach of Fiduciary Duty

Defendants next argue that they are entitled to summary judgment on Count I of plaintiffs' complaint for breach of fiduciary duty because there is no evidence to support plaintiffs' claim that defendants owed them a fiduciary duty.

"[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other.... The superior position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." *Murphy v. Wakelee*, 247 Conn. 396, 400, 721 A.2d 1181 (1998)(internal quotation marks omitted). "Rather than attempt to define a fiduciary relationship in precise detail and in such a manner to exclude new situations, [the Supreme Court has] chosen to leave the bars down for situations in which there is a justifiable trust confided on one side and a resulting superiority and influence to the other." *Dunham v. Dunham*, 204 Conn. 303, 320, 528 A.2d 1123 (1987)(internal quotation marks omitted). Whether such a confidential relationship exists is a generally a question of fact. *Albuquerque v. Albu-*

*querque,* 42 Conn.App. 284, 287, 679 A.2d 962 (1996).

■ Here, however, plaintiffs have failed to produce any evidence that would support a finding of a fiduciary relationship between defendants and plaintiffs. There is no evidence of "a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Murphy,* 247 Conn. at 400, 721 A.2d 1181.

The Connecticut courts have held that the relationship between insurer and insured is one based solely upon contract. "While there may be circumstances, particularly when dealing with third-party claims, in which fiduciary-like duties may be placed on the insurer to benefit the insured, such situations do not arise in first party disputes between insurer and insured." *Grazynski v. Hartford Ins. Co.,* No. CV960337594, 1997 WL 407897, at *3 (Conn.Super. July 10, 1997); *see also Namerow v. Travelers Ins. Co.,* No. CV970568124S, 1998 WL 779567 (Conn.Super.Oct.19, 1998)(holding that while a contract of insurance may impose "obligations of good faith and fair dealing upon the insured, no fiduciary relationship is thereby created"); *Harlach v. Metropolitan Property & Liability Ins. Co.,* 221 Conn. 185, 602 A.2d 1007 (1992) (holding that an insurer has no fiduciary duty to the insured to explain uninsured motorist coverage or the advantages or disadvantages of procuring certain uninsured motorist limits).

Finding no evidence to support plaintiffs' claim of a fiduciary relationship between plaintiffs and defendants, we grant summary judgment in favor of defendants on plaintiffs' first count for breach of fiduciary duty.

### V. Negligent Supervision

■ Although Count II is entitled "negligent supervision," plaintiffs' allegations encompass much broader claims of negligence. More specifically, they allege that defendants were negligent in (a) failing to maintain and enforce a proper system of internal supervision to monitor the activities of Newton; (b) failing to discover Newton's criminal conduct and notify its customers of such activities; (c) failing to warn customers concerning improper and/or unauthorized transaction methods employed by Newton to misappropriate funds from customers; (d) failing to provide proper accountings to plaintiffs, which would have alerted them to Newton's criminal conduct; and (e) failing to act in a reasonable and prudent manner to discover and/or prevent the criminal conduct of Newton. (Pls.' Comp. ¶ 20.)

Defendants argue that they are entitled to summary judgment on this count of plaintiffs' complaint in that they had no duty to supervise Newton's conduct. Defendants rely on the fact that Newton was an "independent broker" and under the Broker's Agreement, Newton acknowledged his status as an independent contractor, whom defendants had no right to control or direct.

Plaintiffs respond that this same Broker's Agreement, which allowed Newton to solicit insurance contracts for defendants, gave defendants the right to monitor his activities and exercise control over his business practices. Further, defendants had provided Newton with Unum applications, forms, marketing materials, and other literature designed to be used for marketing Unum insurance products, and that defendants had a duty to keep control over these materials. Conn. Agency Regs. § 38a–819–2(B)("Every insurer shall establish and at all times maintain a system of control over the content, form and

method of dissemination of all advertisements of its policies. All such advertisements, regardless of by whom written, created, designed or presented, shall be the responsibility of the insurer whose policies are so advertised.")

■ It is undisputed that Newton had been licensed by the State as an agent of Unum America, authorized to solicit applications for certain of its insurance products. Accordingly, Unum America was responsible for the actions of Newton relating to this appointment. *See* Conn. Gen.Stat. § 38a–782(c)(rev. to 2002). The facts also indicate that Newton's defrauding plaintiffs occurred in the course of soliciting their application for an Unum America policy. Newton possessed various forms and advertising materials of Unum America which he used in soliciting the Unum application from plaintiffs and inducing them to switch policies and to pay to him the premium for the Unum America policy. The courts have held that the possession or use of forms of a specific insurer is one of the facts to be considered in determining whether an agency relationship exists. *See 3 Couch on Insurance* § 44:47 (3d ed.2003). Moreover, as pointed out by plaintiffs, the Connecticut Agency Regulations impose on the insurer a responsibility to control the content, form and method of dissemination of all advertisements of its policies.

■ The question of whether an agency relationship exists is generally a question of fact. Based on the record before us, we find that there is sufficient evidence to create a genuine issue of material fact as to the existence of an agency relationship between Unum America and Newton, which would give rise to a duty on the part of Unum America to supervise the acts and conduct of Newton. Accordingly, we deny summary judgment to defendants as to the second count of plaintiffs' complaint.

## VI. CUTPA

Plaintiffs' third cause of action is brought under CUTPA. Plaintiffs allege that defendants are liable under CUTPA in that their actions were "immoral, oppressive and/or unscrupulous," (Pls.' Comp. ¶ 20(a)); their actions were performed in a trade or business; their actions were in violation of public policies against breaches of the covenant of good faith and fair dealing, breaches of fiduciary duties, and breaches of negligent supervision; and their actions violated CUIPA in that defendants and its registered producer Newton "misrepresented incomplete comparisons regarding the terms or conditions or benefits contained in the policies set forth above for the purpose of inducing the Sheltrys to forfeit, surrender and/or replace such contracts of insurance with another." (Pls.' Comp. ¶ 20(d).)

Defendants maintain that they are entitled to summary judgment on plaintiffs' CUTPA claim on three grounds: (1) that negligence cannot form the basis for an action under CUTPA; (2) Connecticut bars third-party claims under CUTPA; and (3) there can be no vicarious liability for a violation of CUTPA.

### A. Negligence as a Basis for CUTPA Claim

■ Initially, defendants ask us to grant summary judgment on plaintiffs' CUTPA count on the ground that mere negligence cannot form the basis for an action under CUTPA.

As is readily apparent from plaintiffs' complaint, defendants' alleged negligent supervision is not the sole basis for their CUTPA claim. Were that so, we would be inclined to agree with defendants that summary judgment in their favor would be appropriate. In *A–G Foods*, 216 Conn. at 216–17, 579 A.2d 69, the Connecticut Su-

preme Court held that Pepperidge Farm's negligent supervision of its distributor could not constitute a violation of CUTPA for two reasons: (1) its negligent supervision did not constitute an "immoral, unethical, oppressive or unscrupulous" practice and (2) in light of the jury's finding the plaintiff 40% negligent, plaintiff did not prove that its injury could not have been reasonably avoided, which is a necessary predicate for recovery under CUTPA.

Plaintiffs, however, have also alleged a violation of CUIPA by virtue of defendants' negligent misrepresentations. A plaintiff may assert a cause of action against an insurer under CUTPA based upon a violation of CUIPA. *See* Conn. Gen.Stat. § 42–110g(a) (affording a cause of action to "[a]ny person who suffers any ascertainable loss of money or property ... as a result of the use or employment of a method, act or practice prohibited by section 42–110b" ... "including a violation of [CUIPA]."); *Macomber v. Travelers Property & Casualty Corp.*, 261 Conn. 620, 644, 804 A.2d 180 (2002); *Mead v. Burns*, 199 Conn. 651, 666, 509 A.2d 11 (1986). Section 38a–816(1), Conn. Gen.Stat., of CUIPA includes in the definition of "unfair methods of competition and unfair and deceptive acts or practices" misrepresentations and false advertising of insurance policies. Plaintiffs' claim, as alleged, would fall within this provision of CUIPA. *See Rizza*, 1999 WL 203739, at *6 (holding that a plaintiff may state a claim under CUTPA by alleging a violation of CUIPA under § 38a–816(1) through only a single misrepresentation). Therefore, we decline to grant summary judgment on the ground that plaintiffs have failed to allege conduct on the part of defendants that could form the basis for an action under CUTPA.

### B. Third–Party Claims under CUTPA

■ Defendants next challenge plaintiffs' CUTPA count on the ground that the Connecticut courts bar third-party claims under CUTPA. Plaintiffs, however, are not "third parties" in the sense that term has been used in the cases cited by defendants. Those cases were personal injury actions in which injured third parties were attempting to sue the tortfeasor's insurer under CUTPA. *See, e.g., Chapell v. Larosa*, No. CV–99–0552801, 2001 WL 58057 (Conn.Super.Jan.5, 2001)(injured third party attempting to sue the tortfeasor's insurer on grounds of unfair settlement tactics). We have found no authority for the proposition that a contractual relationship or privity is required for a party to maintain an action under CUTPA. To the contrary, since the underlying purpose of CUTPA is consumer protection, consumers such as plaintiffs should be entitled to invoke the protections of CUTPA in appropriate cases. *See Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 497, 656 A.2d 1009 (1995)(discussing breadth of persons protected by CUTPA).

### C. Vicarious Liability Under CUTPA

■ Last, defendants assert that plaintiffs' CUTPA claim must fail because they cannot be held vicariously liable for a violation of CUTPA. In Connecticut, there is no *per se* rule holding that a principal cannot be held vicariously liable under CUTPA for the acts of its agent. Instead, Connecticut courts have applied general principles of agency law to determine whether to hold a principal liable for the acts of its agent under CUTPA. *See Pollock v. Panjabi*, 47 Conn.Supp. 179, 200, 781 A.2d 518 (2000). This argument brings us back to the agency issue of whether Newton was acting within the scope of his authority and in furtherance of the principal's business. *Larsen Chelsey Realty Co.*, 232 Conn. at 500, 656 A.2d 1009; *Cardona v. Valentin*, 160 Conn. 18,

22, 273 A.2d 697 (1970). This is a matter on which we have found genuine issues of material fact. Therefore, defendants' motion for summary judgment on plaintiffs' CUTPA claim is denied on this ground.

## VI. Liability of UnumProvident

■ Although not specifically raised by defendants, one additional matter that bears discussion is the liability of Unum-Provident, which is alleged to be a holding company of Unum America. After a careful review of all of the evidence submitted by both sides in connection with this motion for summary judgment, we have failed to find any basis for holding UnumProvident liable to plaintiffs on any of the claims asserted. Accordingly, we dismiss Unum-Provident without prejudice to plaintiffs' filing a motion for reconsideration addressing their theories of liability against this defendant.

### Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment [Doc. # 21] is GRANTED as to Count I (Breach of Fiduciary Duty). Additionally, all claims against Defendant UnumProvident Corporation are dismissed without prejudice. In all other respects, the Motion for Summary Judgment is DENIED.

This case will be placed on the Trial Calendar for May or June, 2003. A Ready Trial Notice will be issued advising counsel of the date for jury selection.

SO ORDERED.