DIANE B. GARRIGUS ET AL. *v.*
GENEVIEVE VIARENGO
(AC 28396)

McLachlan, Lavine and Foti, Js.

Argued October 17, 2008—officially released February 17, 2009

*Angelo Paul Sevarino*, for the appellant (defendant).

*Norman J. Voog*, with whom, on the brief, was *Christopher J. Molyneaux*, for the appellee (plaintiff Matthew Vaccarelli).

*Opinion*

McLACHLAN, J. The defendant, Genevieve Viarengo, appeals from the judgment of the trial court, rendered after a trial to the court, awarding the plaintiff Matthew Vaccarelli, administrator c.t.a. of the estate of Stella Jankowski,[1] damages in the amount of $496,070, and imposing a constructive trust for the benefit of the plaintiff on the certificates of deposit, bank accounts and savings bonds that the defendant had held jointly with Stella Jankowski. The defendant claims that the court improperly found that the plaintiff satisfied the heightened burden of proof with respect to his claim of fraud and the elements necessary for the imposition of a constructive trust. We affirm the judgment of the trial court.

From the evidence presented at trial, the court found the following facts. Walter Jankowski and Stella Jankowski were husband and wife. No children were born to the marriage. In September, 1991, they executed reciprocal wills at the office of attorney John Wabiszczewicz. Each will provided that if the testator's spouse predeceased him or her, the entire estate would be divided among ten nieces, nephews and cousins in varying percentages. The defendant is one of the nieces named in the wills. The Jankowskis appointed each other as fiduciaries.

Walter died on March 27, 1997. The defendant was one of the first relatives to visit Stella after his death. Within days of the death, the defendant accompanied

---

[1] The original complaint was brought by Diane B. Garrigus, Richard Golebiewski, Jerry W. Golebiewski, Edward Szydlik, John Szydlik, Lori G. Woscyna and Vaccarelli, administrator c.t.a. of the estate of Stella Jankowski. The defendant filed a motion to dismiss the complaint as to all plaintiffs except Vaccarelli, which was granted by the court, *Gallagher, J.*, on February 22, 2005. Accordingly, in this opinion, we refer to Vaccarelli as the plaintiff.

Stella to her bank, at which time Stella added the defendant as a joint owner on savings bonds worth approximately $80,000. Within six months of Walter's death, Stella added the defendant as a joint owner on several savings and checking accounts, certificates of deposit and additional savings bonds. During that period of time, Stella and the defendant met with Wabiszczewicz to discuss the probating of Walter's will and the drafting of a new will for Stella. When Wabiszczewicz inquired as to Walter's assets, Stella did not disclose most of the bank accounts or any of the savings bond holdings that she had held jointly with Walter, nor did she mention that she had added the defendant as a joint owner of most of those assets.

In discussing the provisions of her new will, Stella told Wabiszczewicz that she wanted each of her ten nieces, nephews and cousins to receive 10 percent of her estate. She directed Wabiszczewicz to name the defendant and Richard Golebiewski as the executors. She also indicated that she wanted to give the defendant a durable power of attorney and that she wanted the defendant to be the person entrusted with her health care decisions. The defendant was present during all of those discussions and also was present when Stella executed a new will and other documents on July 11, 1997. The defendant was aware of the extent of Stella's holdings but had remained silent when the subject of Stella's assets was raised by Wabiszczewicz.

After she executed her will, Stella told the defendant and Golebiewski that her valuables were kept in a safe in the attic of her home. She gave both of her executors the combination to the safe and had each of them practice opening it at various times. Stella died on October 10, 2001. Within days of her death, Golebiewski went to Stella's home and discovered that the contents of the safe and the financial records in the basement were missing. He telephoned the defendant, who informed

him that she had taken everything and that she would review them. Within two weeks after Stella's death, the defendant began sending jointly held certificates of deposit and savings bonds in varying amounts to Stella's heirs with little explanation. When those heirs questioned the defendant as to the amounts received, she gave vague responses concerning their share in the estate and did not disclose her jointly owned accounts and bonds.

In January, 2002, the defendant and Golebiewski submitted an application to open Stella's estate with the Probate Court. The application, signed under oath, stated that Stella's gross taxable estate was $70,000. At that point in time, Golebiewski still had no knowledge of the extent of Stella's assets because the defendant failed to provide him with the information that he had requested. The defendant's lack of cooperation prompted Golebiewski to contact the United States Department of the Treasury in February, 2002, to receive an accounting of the savings bonds that had been disbursed by the defendant. In March, 2002, Wabiszczewicz instructed the defendant to account fully for the joint holdings in her possession. She did not cooperate, and Wabiszczewicz suggested that she seek legal advice from another attorney regarding his direction to disclose all of the accounts.

Eventually, it was discovered that Stella's estate, which was comprised of some jewelry, her home in Waterbury and jointly held bank accounts, certificates of deposit and savings bonds, totaled $803,859. The jointly owned assets formed the bulk of the estate, with a value in excess of $706,000. At the time of Stella's death, the accounts and bonds she held jointly with the defendant totaled $496,070, and the defendant claimed that those accounts were hers and not part of the estate property. The remainder of the jointly held bank accounts, certificates of deposit and savings bonds

were jointly held by Stella and twelve other individuals. The disagreement as to the ownership of the jointly held assets resulted in several unproductive probate hearings, leading to the resignations of the defendant and Golebiewski as the executors of Stella's estate. On January 21, 2004, the plaintiff was appointed administrator c.t.a. of her estate by the Probate Court.

On October 19, 2004, the plaintiff filed the present action against the defendant. The operative complaint alleged undue influence, fraud, statutory theft and unjust enrichment and sought to have a constructive trust and a resulting trust imposed for the benefit of the estate on the bank accounts, certificates of deposit and savings bonds that had been held jointly by Stella Jankowski and the defendant. During an eight day trial in July, 2006, the court heard testimony from several witnesses and admitted dozens of exhibits.

On December 8, 2006, the court issued its memorandum of decision. After setting forth its findings of fact and its determinations with respect to the credibility of the witnesses, the court concluded: (1) there was no evidence that the defendant exerted any pressure or otherwise forced Stella to create joint accounts with the defendant or others, and, therefore, the plaintiff could not prevail on the claim of undue influence; (2) the plaintiff proved his claim of fraud by clear and convincing evidence, thereby rebutting the presumption that the joint bank accounts and savings bonds held by Stella and the defendant were the property of the defendant; (3) the plaintiff, with respect to his statutory theft claim, failed to prove by clear and convincing evidence that the defendant possessed the specific intent to permanently deprive Stella of her assets; (4) the plaintiff could not recover under his claim for unjust enrichment because he failed to prove the existence of a contract between the defendant and the plaintiff or the defendant and Stella; (5) with respect to the

bank accounts and savings bonds held jointly by Stella and the defendant, the imposition of a constructive trust was warranted because there was ample evidence that those assets had been held jointly as a convenience for Stella and to facilitate the distribution of her estate to her nieces, nephews and cousins; and (6) the imposition of a resulting trust was not warranted because the court had already determined that the defendant committed fraud and had implemented a constructive trust for the benefit of the estate.

On the basis of those findings and conclusions, the court awarded the plaintiff damages in the amount of $496,070, and imposed a constructive trust for the benefit of the estate on the bank accounts, certificates of deposit and savings bonds that the defendant had held jointly with Stella. This appeal followed.[2]

I

The defendant's first claim is that the court improperly found that the plaintiff satisfied the heightened burden of proof with respect to his claim of fraud. Specifically, the defendant argues that the plaintiff failed to establish by clear and convincing evidence that the defendant made a false representation of a material fact to Stella, that any promises she may have made were made with the intention of not keeping them or that any representations made were made with the intent of inducing Stella to create jointly held assets. Additionally, the defendant claims that the court improperly concluded that any silence on the part of the defendant, in the absence of an actual misrepresentation, could be the basis for a finding of fraud. We disagree.

[2] The plaintiff has not cross appealed from the court's judgment in favor of the defendant on the counts of undue influence, statutory theft or unjust enrichment or the count requesting the imposition of a resulting trust.

Joint survivorship bank accounts are governed by General Statutes § 36a-290.[3] That statutory provision creates a presumption, rebuttable only by clear and convincing evidence, that the establishment of a joint account is evidence of the intent of the named owners to have the proceeds, on the death of one of them, go to the other joint account holder. See *Durso* v. *Vessichio*, 79 Conn. App. 112, 122, 828 A.2d 1280 (2003). In the absence of fraud, undue influence or other clear and convincing evidence to the contrary, the creation of such an account is prima facie evidence of the intent of the named owners to vest title to the account, including all subsequent deposits made to it, in the survivor. General Statutes § 36a-290 (b). The controlling federal regulation for joint United States savings bonds is 31 C.F.R. § 353.70 (b).[4]

---

[3] General Statutes § 36a-290 provides: "(a) When a deposit account has been established at any bank, or a share account has been established at any Connecticut credit union or federal credit union, in the names of two or more natural persons and under such terms as to be paid to any one of them, or to the survivor or survivors of them, such account is deemed a joint account, and any part or all of the balance of such account, including any and all subsequent deposits or additions made thereto, may be paid to any of such persons during the lifetime of all of them or to the survivor or any of the survivors of such persons after the death of one or more of them. Any such payment constitutes a valid and sufficient release and discharge of such bank, Connecticut credit union or federal credit union, or its successor, as to all payments so made.

"(b) The establishment of a deposit account or share account which is a joint account under subsection (a) of this section is, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, prima facie evidence of the intention of all of the named owners thereof to vest title to such account, including all subsequent deposits and additions made thereto, in such survivor or survivors, in any action or proceeding between any two or more of the depositors, respecting the ownership of such account or its proceeds.

"(c) This section shall not apply to any deposit account or share account where any owner died before October 1, 1971, nor shall it apply to any action pending on that date."

[4] Section 353.70 of title 31 of the Code of Federal Regulations provides in relevant part: "The following rules govern ownership or entitlement where one or both of the persons named on a bond have died without the bond having been surrendered for payment or reissue . . .

In the present case, the court found that the plaintiff, by clear and convincing evidence, rebutted that presumption by establishing that the defendant committed a fraud on the estate of Stella Jankowski. "[C]lear and convincing proof . . . denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Internal quotation marks omitted.) *Boccanfuso* v. *Green*, 91 Conn. App. 296, 305–306, 880 A.2d 889 (2005).

"Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact. . . . The trier of facts is the judge of the credibility of the testimony and of the weight to be accorded it. . . . When the trial court finds that a plaintiff has proven all of the essential elements of fraud, its decision will not be reversed or modified unless it is clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . .

"Under the common law . . . it is well settled that the essential elements of fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue

---

"(b) *Coowner bond*—(1) *One owner deceased.* If one of the coowners named on a bond has died, the surviving coowner will be recognized as the sole and absolute owner, and payment or reissue will be made as though the bond were registered in the name of the survivor alone. Any request for reissue by the surviving coowner must be supported by proof of death of the other coowner. . . ." (Emphasis in original.)

The parties have not argued that joint savings bonds are to be treated differently than joint bank accounts for purposes of rebutting the presumption of ownership.

and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury. . . . All of these ingredients must be found to exist . . . ." (Citations omitted; internal quotation marks omitted.) *Ferris* v. *Faford*, 93 Conn. App. 679, 691–92, 890 A.2d 602 (2006).

The defendant argues that the plaintiff failed to prove any of the elements of fraud by clear and convincing evidence. With respect to the first element, making a false representation as a statement of fact, the defendant claims that no evidence was submitted to show that she had made *any* representation to Stella with respect to the creation of joint accounts or the manner in which the defendant intended to distribute Stella's assets after her death. Because there was no proof that any representations had been made, the defendant argues, the plaintiff failed to prove the remaining elements of fraud, i.e., that she had made representations to Stella that she had known to be untrue and that she had made representations for the purpose of inducing Stella to establish joint assets.

In essence, the defendant is arguing that there is no *direct* evidence that any such representations were made. There was no testimony that anyone heard the defendant tell Stella that she should add her name as a joint owner to Stella's bank accounts, certificates of deposit or savings bonds. No one heard a discussion between the defendant and Stella in which the defendant indicated that she would divide the joint assets among the ten beneficiaries named in the will, including the joint assets held by the defendant and Stella. No one overheard a conversation in which the defendant assured Stella that she would not keep the proceeds from the survivorship accounts for herself.

Direct evidence of false statements is not necessary, or even expected, under such circumstances. If, indeed,

as the court found, the defendant wanted Stella to believe that she would divide all of Stella's assets equally among the ten nieces, nephews and cousins, while planning instead to keep all of the proceeds in the joint accounts bearing her name, she certainly would not have announced her intentions to Stella or any of the beneficiaries. Proof of fraud likely would be circumstantial rather than direct.

Although "[t]he party alleging fraud bears the burden of proving it with clear, precise, and unequivocal evidence. . . . The evidence can be direct or circumstantial. . . . Proof by circumstantial evidence is sufficient where rational minds could reasonably and logically draw the necessary inferences. . . . Each inferential fact need not be proven by the quantum of proof required to find the ultimate fact." (Citations omitted; internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 110, 912 A.2d 1019 (2007). "The law does not distinguish between direct and circumstantial evidence as far as probative force is concerned. . . . Insofar as circumstantial evidence can be and is routinely used to meet the higher standard of proof in a criminal prosecution, so can it be used in a case . . . where the applicable standard is that of clear and convincing proof." (Citations omitted; internal quotation marks omitted.) *In re Cheyenne A.*, 59 Conn. App. 151, 158–59, 756 A.2d 303, cert. denied, 254 Conn. 940, 761 A.2d 759 (2000).

In the present case, in reaching its conclusion that the defendant perpetrated a fraud on Stella's estate, the court found the following facts. Stella was very close to all of her ten nieces, nephews and cousins and referred to them as her children. On the day of Walter's death, the defendant came to visit Stella at her home in Waterbury; prior to Walter's death, the defendant's visits were infrequent. Within days of his death, the

defendant transported Stella to the bank, and the defendant's name was added as a joint owner on savings bonds worth approximately $80,000. The defendant claimed that Stella did not tell her why she had transferred the assets into a joint account and that she did not ask her the reason for the transfer. Within six months of Walter's death, the defendant was added as a joint owner on several of Stella's savings and checking accounts, certificates of deposit and savings bonds.

Stella told several people, including Wabiszczewicz, the attorney who drafted her will, that she wanted to divide her estate equally among her "children." Although the defendant was with Stella when she met with Wabiszczewicz and discussed her intentions, neither Stella nor the defendant disclosed the fact that joint accounts had already been established and that the defendant was the joint owner on the bulk of those assets. Both Stella and the defendant were under the impression that joint assets did not have to be disclosed to the Probate Court in the inventory of the estate or for purposes of succession taxes.

When a few relatives became aware that the defendant was a joint owner on some of Stella's bank accounts, they expressed their concern to Stella that those accounts would belong to the defendant when Stella died. Stella was adamant that the defendant's name had been added for convenience only because the defendant helped Stella with her financial affairs and was the coexecutor of her will. Stella indicated that she had told the defendant that her estate was to be divided equally among the ten beneficiaries.

Sometime during Stella's final hospitalization, the defendant removed all of the joint assets from Stella's safe without informing Golebiewski, the coexecutor of Stella's will. After Stella's death, when Golebiewski opened the safe, he discovered that most of the contents

had been removed, and he contacted the defendant. The defendant admitted that she had taken the safe's contents and the financial records from the basement because she "needed to go through things" and told him that "there was nothing for him to see." Within two weeks of Stella's death, the defendant sent certificates of deposits and savings bonds that were jointly held by Stella and others to the named joint owners. The defendant claimed that she did so at the direction of Wabiszczewicz, who denied telling her to distribute any of the joint assets. There were twelve other individuals named on joint assets, but the amounts were significantly less than the joint assets held by Stella and the defendant. The court noted that there was little credible evidence of Stella's intentions in creating the other joint accounts but inferred that she did so under her mistaken belief that she could avoid probate scrutiny and tax consequences.

When the various heirs contacted the defendant to inquire about the amount of the joint assets distributed, she gave vague responses and never informed them as to her claimed share of the joint assets. Throughout the six month period following Stella's death, the defendant did not cooperate with Golebiewski in providing him with the information necessary to file the estate tax returns. Golebiewski, as the coexecutor, was forced to contact the Department of the Treasury for an accounting of the savings bonds that had been held by Stella. The defendant also refused to cooperate with Wabiszczewicz when he instructed her to disclose all of the joint holdings and, thereafter, advised her to seek other legal advice regarding his direction to disclose those assets.

Months after Stella's death, Golebiewski and the other beneficiaries became aware of the fact that the defendant claimed joint assets worth approximately $496,070 at the time of Stella's death. Because Stella

had created joint holdings with virtually all of her bank accounts, certificates of deposit and savings bonds, the remainder of her estate to be divided among the ten nieces, nephews and cousins consisted of the net proceeds from the sale of the Waterbury residence, which was approximately $76,500. As previously stated, Wabiszczewicz was not aware of the joint accounts and drafted Stella's will with the provision that all succession and estate taxes would be paid from the residual estate and not prorated among the various recipients of property that passed outside of the estate. As a consequence, the defendant became the recipient of the vast majority of Stella's estate with no tax liability under the will. The remainder of the estate, however, had significant tax liability. There was very little left to be distributed among the remaining beneficiaries.

In its lengthy memorandum of decision, the court often commented that it found the defendant's testimony "not worthy of belief" or her claims "not to be credible." On the basis of its findings of fact and credibility determinations, the court concluded: "It is clear to the court that Stella made arrangements to have the defendant's name on her accounts out of convenience and not as an intention to make a gift to her. It is also clear to this court, based on the credible testimony, that Stella informed the defendant that the moneys and bonds that they held jointly were to be divided evenly between the ten 'children.'" Accordingly, the court found in favor of the plaintiff on his claim of fraud.

The defendant argues that the court's conclusion is clearly erroneous because there is no evidence that the defendant made any actual misrepresentation to Stella about her plans for the future distribution of Stella's assets and that the court improperly found that any silence on the defendant's part when Stella discussed the division of her assets among her "children" satisfied the element of fraud requiring a false representation.

We conclude that under the circumstances of this case, the court's conclusion that the defendant's silence constituted fraudulent behavior was not clearly erroneous.

In its decision, the court reasoned as follows: "It is also clear to this court that the defendant undoubtedly assented to follow Stella's intentions. While the defendant asserts in her brief that 'no witness can offer any proof that [the defendant] made any definite or certain unequivocal misrepresentation to Stella,' there certainly are strong inferences that she did so. The credible testimony was that Stella told the defendant that she was to divide the assets among the ten 'children.' When faced with Stella's direction, the court can only imagine that the defendant had three options: agree or consent to divide the assets, refuse to divide the assets or to remain silent. Given the testimony that Stella was a strong willed individual, the defendant would not have remained as a confidant of Stella's if she refused her direction. If the defendant remained silent, Stella undoubtedly assumed the defendant's assent, as she thereafter transferred the assets into joint names."

It is well settled that silence can constitute fraud under certain circumstances. "Fraud is defined as [d]eceit, deception, artifice, or trickery operating prejudicially on the rights of another, and so intended, by inducing him to part with property or surrender some legal right. . . . Anything calculated to deceive another to his prejudice and accomplishing the purpose, whether it be an act, a word, *silence*, the suppression of the truth, or other device contrary to the plain rules of common honesty." (Emphasis added; internal quotation marks omitted.) *Nelson* v. *Charlesworth*, 82 Conn. App. 710, 714, 846 A.2d 923 (2004). "[U]nder certain circumstances, there may be as much fraud in a person's silence as in a false statement." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Egbarin*, 61 Conn. App. 445, 455, 767 A.2d 732, cert.

denied, 255 Conn. 949, 769 A.2d 64 (2001), quoting *Egan v. Hudson Nut Products, Inc.*, 142 Conn. 344, 347, 114 A.2d 213 (1955). In the present case, the defendant was the coexecutor of Stella's will, was entrusted to make health care decisions for Stella, was given Stella's power of attorney and helped Stella with her financial affairs. Stella told the defendant how she wanted her assets to be distributed. Under those circumstances, the court's conclusion that the defendant's silence constituted fraud was not clearly erroneous.

Having found, by inference, that the defendant made false representations or that she made false representations through her silence, the court concluded that the remaining elements of fraud also had been satisfied: "There was no evidence presented that indicated that the defendant told anyone of her becoming a joint owner of Stella's substantial assets prior to her death, including Stella's attorney. Further, the defendant's actions after Stella's death in cleaning out Stella's safe, her reluctance to meet with her coexecutor, her surreptitiously disposing of the other joint accounts and her reluctance to disclose the extent of her holdings clearly lead this court to the conclusion that the defendant had no intention to fulfill her promise to Stella at the time she made it.

"As a result of the defendant's representations, Stella relied on them and thereafter transferred her various [certificates of deposit], savings accounts and [United States] savings bonds into joint names with her and the defendant in an amount which totaled approximately $496,070 at the time of Stella's death. It is also clear to this court that as a result of the defendant's assurances, Stella made no effort to change her will or otherwise provide for the remainder of her nine 'children,' which clearly was her intent." Accordingly, the court concluded that the plaintiff successfully had rebutted the

presumption as to joint accounts set forth in § 36a-290 and in 31 C.F.R. § 353.70 (b).

The defendant's challenge of the evidence focuses on the contradictory evidence that was presented at trial and the claim that the testimony of the plaintiff's witnesses was not believable. Such an argument challenges the credibility of the witnesses and not the sufficiency of the evidence. The court, as the finder of fact, was the final arbiter of credibility and was free to believe the testimony of the plaintiff's witnesses and to disbelieve the testimony of the defendant and her witnesses. *Duplissie* v. *Devino*, 96 Conn. App. 673, 682, 902 A.2d 30, cert. denied, 280 Conn. 916, 908 A.2d 536 (2006). In viewing the evidence in the light most favorable to the plaintiff, we cannot conclude that he failed to satisfy his heightened burden of proving that the defendant had perpetrated a fraud on Stella's estate.

II

The defendant's next claim is that the court improperly found that the plaintiff satisfied the heightened burden of proof with respect to the elements necessary for the imposition of a constructive trust. Specifically, the defendant argues that the plaintiff failed to prove by clear and convincing evidence that the relationship between Stella and the defendant "was of such a nature as to equate to the type of confidential relationship necessary to impose a constructive trust." The defendant also claims that the court's conclusion that the defendant was unjustly enriched by virtue of the fact that she obtained the bulk of Stella's estate and yet had virtually no succession tax liability under the will was inconsistent with the court's judgment in favor of the defendant on the plaintiff's count of unjust enrichment.

"A court's determination of whether to impose a constructive trust must stand unless it is clearly erroneous or involves an abuse of discretion. . . . This limited

scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *Menard* v. *Gaskell*, 92 Conn. App. 551, 555, 885 A.2d 1254 (2005).

*"A constructive trust arises* contrary to intention and in invitum, *against one who, by fraud, actual or constructive, by duress or abuse of confidence,* by commission of wrong, *or by any form of unconscionable conduct,* artifice, concealment, or questionable means, or who in any way against equity and good conscience, *either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. . . .* A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form . . . [or] when a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." (Emphasis added; internal quotation marks omitted.) *Cadle Co.* v. *Gabel,* 69 Conn. App. 279, 288, 794 A.2d 1029 (2002). "The issue raised by a claim for a constructive trust is, in essence, whether a party has committed actual or constructive fraud or whether he or she has been unjustly enriched." Id., 295.

In the present case, the court imposed a constructive trust on the assets held jointly by Stella and the defendant after reciting the previously stated standards in its memorandum of decision and finding that the plaintiff had proved by clear and convincing evidence that the defendant committed fraud in obtaining those assets and was unjustly enriched by holding the personal property that in equity and good conscience belonged to the ten beneficiaries of Stella's estate. The court, in its discussion, stated that Stella told the defendant to divide the jointly held assets among her ten "children,"

that the defendant failed to do so and that the defendant was unjustly enriched because she obtained the bulk of Stella's estate yet had virtually no succession tax liability under the will.

The defendant's argument that the court could not impose a constructive trust because there was no confidential relationship between Stella and the defendant is without merit. The defendant claims that "[b]efore the court can find that a constructive trust exists and should be imposed, the court must find, *in addition to* the element [of] fraud or misrepresentation, that a confidential relationship existed between Stella, as transferor, and the defendant, as transferee, at the time of the transfer of the property."[5] (Emphasis in original.) Our case law does not support that position. "In order for a constructive trust to be imposed, the plaintiff must allege [and prove] fraud, misrepresentation, imposition, circumvention, artifice or concealment, *or* abuse of confidential relations." (Emphasis added; internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 860, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

If fraud is established by clear and convincing evidence, which it was in this case, there is no additional requirement to prove the existence of a confidential relationship. The court imposed a constructive trust because it had found in favor of the plaintiff on his claim of fraud and because the defendant would be

---

[5] The defendant cited cases, which do not hold as she stated, and cited § 183 of the Restatement of Restitution (1937). The Restatement, however, addresses a situation in which a constructive trust can be imposed on an interest in land, and provides that such a trust may be enforced by a third person if (a) the transferee induced the transfer by fraud, duress or undue influence, *or* (b) the transferee was in a confidential relation to the transferor at the time of the transfer, *or* (c) the transfer was made by the transferor in contemplation of death. See Restatement, Restitution § 183 (1937). Again, as in the case law, if there is fraud, it is not necessary to prove the added element of a confidential relationship.

unjustly enriched if she retained the proceeds from the assets she had held jointly with Stella. The court did not address the issue of whether a confidential relationship existed; it was not necessary to do so.

The defendant's final claim is that the court improperly concluded that the defendant would be unjustly enriched if allowed to retain the proceeds from the joint accounts when the court rendered judgment in favor of the defendant on the plaintiff's count alleging unjust enrichment. The defendant argues that the court's finding is inconsistent. We disagree.

Count four of the plaintiff's operative complaint, titled "Unjust Enrichment," alleged that the defendant benefited from her wrongful acts by failing to justly compensate Stella's estate or its heirs, thereby unjustly enriching herself. In its memorandum of decision, the court found in favor of the defendant on this claim because "the plaintiff failed to show sufficient facts to prove the existence of a contract between the defendant and the plaintiff or the decedent. Absent that prerequisite, there can be no recovery for unjust enrichment, and judgment is entered in favor of the defendant on this count."

"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." (Internal quotation marks omitted.) *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 573, 898 A.2d 178 (2006). In his cause of action alleging unjust enrichment, therefore, the plaintiff in this case had to prove the existence of a contract. He failed to do so. In seeking a constructive trust, however, there is no requirement that the transfer of the property at issue was made pursuant to an existing contract. The plaintiff, after proving fraud, had to prove that the defendant would be unjustly enriched if allowed to retain

the proceeds from the joint assets. They are different causes of action requiring different elements of proof. It was not inconsistent for the court to conclude that the defendant would be unjustly enriched unless it imposed a constructive trust on the jointly held bank accounts, certificates of deposit and savings bonds because the plaintiff did not have to prove the existence of a contract to be entitled to that equitable remedy.

The judgment is affirmed.

In this opinion the other judges concurred.