******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ALICE K. GECI, EXECUTRIX (ESTATE OF
WILLIAM F. KLEE), ET AL.
*v.* DAVID BOOR

ALICE K. GECI, EXECUTRIX (ESTATE OF
WILLIAM F. KLEE), ET AL.
*v.* DAVID BOOR ET AL.
(AC 39446)

Keller, Prescott and Kahn, Js.*

*Syllabus*

The defendant appealed to this court from the judgments of the trial court, finding, inter alia, that upon the decedent's death, the named plaintiff, A, the decedent's daughter and executrix of his estate, had become the sole owner of certain joint bank accounts that had been held by the decedent and A, and ordering the reinstatement of A as the executrix of the decedent's estate after she had been removed as executrix by order of the Probate Court. The Probate Court had found, inter alia, that the decedent and A held funds in joint accounts for convenience purposes only and that the decedent had not intended that A become the sole owner of those funds upon his death. The Probate Court also had determined that A had undervalued certain assets in the inventory of the decedent's estate and ordered, inter alia, that a constructive trust for the benefit of the defendant be placed on the funds in the joint accounts and on the undervalued assets. *Held*:

1. The defendant could not prevail on his claim that the trial court erred by finding that, upon the death of the decedent, A became the sole owner of the joint bank accounts that had been held by the decedent and A, and, thus, that those joint bank accounts were not part of the decedent's estate:

   a. The defendant's claim that the court should have found that A was in a confidential relationship with the decedent, which would have shifted the burden of proof regarding ownership of the accounts to A, was unavailing; the record contained evidence demonstrating that A's relationship with the decedent did not reflect the paradigms of a confidential relationship, as there was evidence that the decedent did not wholly trust A to manage his finances, and that he monitored and made the ultimate determination in the management of his financial affairs, and the trial court's finding that the decedent was capable of managing his financial affairs was supported by evidence that he had successfully operated a family farm, and had an understanding of complex legal and financial documents, and of survivorship rights on a joint account.

   b. It was not improper for the trial court to rely on certain case law for the proposition that it was the court's responsibility, as the finder of fact, to determine the factual issue of the ownership of the funds in the joint accounts; even though the court cited to a criminal case, that case discussed the statute (§ 36a-290) governing joint accounts at length, and the court was free to look to any case that it believed was instructive in deciding the matter before it.

   c. It was not clearly erroneous for the trial court to fail to find that A fraudulently concealed the survivorship rights on the joint accounts from her daughter, the decedent and the decedent's attorney; whether A informed her daughter about the survivorship nature of the accounts was not relevant to the intent of the joint account holders, and the court, which was presented with contradictory testimony, was free to assign credibility to the testimony that A did not conceal the survivorship rights from the decedent or his attorney.

   d. The defendant's claim that the trial court failed to give proper weight to evidence concerning the decedent's intent was unavailing, that court having weighed that evidence and decided that it did not clearly and convincingly overcome the presumption in the statute (§ 36a-290 [b]) that governs joint accounts that the decedent intended the joint accounts to become the property of the surviving account holder.

2. The trial court did not abuse its discretion by reinstating A as the executrix of the decedent's estate; even though the defendant's appraisals of certain assets differed from A's valuations of those assets, the court's decision to reinstate A as the executrix was reasonable and supported by the record, as the values utilized by A were equal or close in value to the tax assessments on the assets by the town of Ellington, which were admitted into evidence.

Argued September 8—officially released December 12, 2017

*Procedural History*

Appeals from the orders and decrees of the Probate Court for the district of Ellington imposing, inter alia, a constructive trust on certain assets of the decedent's estate and removing the named plaintiff in both appeals as executrix of the decedent's estate, brought to the Superior Court in the judicial district of Tolland, where the appeals were consolidated; thereafter, the named defendant filed a counterclaim; subsequently, the defendant John Henneberger was defaulted for failure to plead; thereafter, the matter was tried to the court, *Fuger, J.*; judgments for the plaintiff, from which the named defendant appealed to this court. *Affirmed.*

*Malcolm F. Barlow*, for the appellant (named defendant).

*Vincent John Purnhagen*, for the appellee (plaintiff).

*Opinion*

KELLER, J. In this consolidated probate appeal, the defendant David Boor appeals from the judgments rendered by the trial court in favor of the plaintiff, Alice K. Geci.[1] The defendant claims that (1) the court erred by finding that, upon the death of the decedent, William F. Klee, the plaintiff became the sole owner of joint bank accounts held by the decedent and the plaintiff, and, thus, they were not part of his estate, and (2) the court abused its discretion by reinstating the plaintiff as the executrix of the decedent's estate. We disagree with the defendant and, therefore, affirm the judgments of the trial court.

We begin by setting forth the relevant facts and procedural history. On July 12, 2015, the Probate Court for the district of Ellington issued a decision in which it found that the decedent and the plaintiff held funds in joint accounts for convenience purposes only, that the decedent did not intend for the plaintiff to become the sole owner of the funds in the joint accounts upon his death, that the plaintiff undervalued assets in the inventory of the estate, and that money given to the plaintiff by the decedent to purchase a new car must be reported as estate inventory. On the basis of those findings, the Probate Court ordered that a constructive trust for the benefit of the defendant be placed on the undervalued assets and the funds in the joint accounts or, in the alternative, that a constructive trust be imposed on the remainder of the proceeds in the decedent's estate. The Probate Court also ordered that the money the plaintiff used to purchase the car must be reported as an advanced distribution in the final accounting of the decedent's estate. Later, on August 17, 2015, the Probate Court removed the plaintiff as executrix of the decedent's estate.

Pursuant to General Statutes § 45a-186 (a), the plaintiff appealed to the Superior Court from the Probate Court's orders involving the joint bank accounts and its decision to remove her as executrix of the decedent's estate. The Superior Court consolidated the plaintiff's appeals and conducted a de novo hearing focused on two issues—whether the jointly held bank accounts in question were part of the decedent's estate and whether the plaintiff should be reinstated as the executrix. The court, after conducting a three day bench trial, found that the plaintiff became the sole owner of the joint bank accounts upon the decedent's death. The court also reinstated the plaintiff as the executrix of the decedent's estate.

The trial court set forth the following facts in its memorandum of decision: "[The decedent] . . . died on September 19, 2013 [and was] predeceased [by his spouse, Gloria R. Klee. The decedent and Gloria Klee] had three children . . . the plaintiff, Marjorie K. Heintz

and Frederick G. Klee. All three of these children . . . survived the decedent. . . . [The decedent] was, by all reports, known to be a hard-working, self-employed farmer throughout his life, who, in partnership with . . . Gloria Klee . . . was able to maintain a farming business in the town of Ellington, Connecticut, for many years. Both the decedent and [Gloria Klee] did physical work on the farm. However, while it was the decedent who was primarily involved in the actual physical operation of the farming business, it was [Gloria] Klee who did all the household chores and bookkeeping . . . .

"Notwithstanding the fact that the decedent did not routinely write out checks to pay family household or business related bills, the decedent was nonetheless a competent and savvy businessman/farmer. . . . [According to the] plaintiff's expert witness, Attorney Atherton B. Ryan, the decedent was more than capable of managing and conducting his own affairs." (Internal quotation marks omitted.) Ryan's professional relationship with the decedent began in 2006 when the decedent hired Ryan to collect a debt from the decedent's daughter, Marjorie Heintz. During the litigation regarding the contested debt, Ryan advised the decedent to amend his will. The decedent directed Ryan to draft a new will[2] in order to "remove Marjorie from the will and to give Marjorie's one-third share to Marjorie's children, the defendant, David Boor, (a 2/9ths share) and [the defendant's] sister, Melissa Mascalla, (a 1/9th share)." The decedent signed this will on June 13, 2006.

Gloria Klee was diagnosed with cancer in 2005. Shortly thereafter, the plaintiff "assumed not only the role of caregiver for her mother during the period of her mother's final illness but also her mother's duties at the farm. This included not only doing the bookkeeping and bill-paying for the family household, but more importantly, assuming the responsibility for [the decedent's] well-being after Gloria [Klee] had died. With this in mind, the decedent and [Gloria Klee] made a conscious decision during the period of [her] last illness to apprise the plaintiff of their financial affairs. . . . [Gloria Klee] showed the plaintiff all of the financial and bookkeeping documents . . . ." (Internal quotation marks omitted.)

The decedent, Gloria Klee, and the plaintiff opened joint checking and savings accounts on April 5, 2006, in person at Bank of America.[3] On April 11, 2006, the decedent and Gloria Klee also made the plaintiff a joint owner with a right of survivorship on three certificate of deposit accounts at Rockville Bank. Gloria Klee died shortly after adding the plaintiff onto those accounts. The decedent closed all of the accounts at Bank of America and Rockville Bank on March 12, 2007.

The decedent once again created a new will on January 11, 2012, to replace the June 13, 2006 will. The new "will provided a few specific bequests with the

residuary of the decedent's estate to be divided equally between the plaintiff and the defendant . . . . No provision was made for the decedent's daughter, Marjorie, or the decedent's son, Frederick [Klee][4] . . . . [This will was] admitted to probate after the decedent's death . . . and the plaintiff was appointed executrix of the estate."

Although not explicitly set forth in the court's memorandum of decision, the following additional facts are not disputed by the parties and are consistent with the court's other findings. The plaintiff and decedent opened joint accounts with a right of survivorship at Rockville Bank, which is now known as United Bank. At the time of the decedent's death, the decedent and the plaintiff were signatories on a joint checking account, a joint savings account, and four joint certificate of deposit accounts at United Bank. The plaintiff did not probate the funds, totaling approximately $400,000, in the bank accounts. Additional facts will be set forth as needed.

I

The defendant claims that the court erred by finding that the plaintiff became the sole owner of joint bank accounts held by the decedent and the plaintiff upon the decedent's death. We disagree.

We begin by setting forth the relevant law pertaining to the ownership of joint bank accounts after the death of one account holder, as well as the standard that governs our review of the court's findings. Joint survivorship bank accounts are governed by General Statutes § 36a-290.[5] Case law interprets § 36a-290 (b) as giving rise to a rebuttable presumption that "the creation of a joint account is evidence of the intent of the person creating the account to have the proceeds go, upon his or her death, to the other joint account holder." *Bunting* v. *Bunting*, 60 Conn. App. 665, 679, 760 A.2d 989 (2000). A person challenging the survivor's right to ownership of the balance in the account must overcome the presumption with clear and convincing evidence. *Garrigus* v. *Viarengo*, 112 Conn. App. 655, 662, 963 A.2d 1065 (2009). The phrase "clear and convincing" denotes a degree of belief that lies between a preponderance of the evidence and proof beyond a reasonable doubt. *Dacey* v. *Connecticut Bar Assn.*, 170 Conn. 520, 536–37, 368 A.2d 125 (1976). "[C]lear and convincing proof is strong, positive, free from doubt, and full, clear and decisive." (Internal quotation marks omitted.) Id., 537. When, however, the challenger presents clear and convincing evidence that the surviving account holder committed fraud, exerted undue influence on the deceased account holder; *Garrigus* v. *Viarengo*, supra, 662; or was in " 'a confidential relationship' " with the deceased account holder, the burden of proof with regard to ownership shifts to the surviving account holder, who then has the burden of proving fair dealing

or the absence of undue influence by clear and convincing evidence. *Bunting* v. *Bunting*, supra, 680.

The issue of ownership upon the death of a joint account holder is a factual one. *Driscoll* v. *Norwich Savings Society*, 139 Conn. 346, 349, 93 A.2d 925 (1952). Appellate review of findings of fact is limited to the clearly erroneous standard. *Bunting* v. *Bunting*, supra, 60 Conn. App. 679. A finding of fact is deemed clearly erroneous when there is no evidence in the record to support it or when there is evidence, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id. This court "cannot retry the facts or pass upon the credibility of the witnesses." (Internal quotation marks omitted.) Id.

The court stated that the defendant in this case bore the burden of persuasion, by clear and convincing evidence, to rebut "the statutory presumption vesting ownership in the surviving owner in a joint account upon the demise of the other joint account holder . . . ." The court found that the defendant did not meet that burden. Because the court did not shift the burden to the plaintiff, it can be inferred that the court did not find that the plaintiff committed fraud, exerted undue influence on the decedent, or that she and the decedent were in a confidential relationship.

In challenging the court's finding that the plaintiff became the sole owner of the accounts upon the decedent's death, the defendant makes four arguments. The defendant first argues that the court should have found that the plaintiff and the decedent were in a confidential relationship, shifting the burden of proof with regard to ownership of the accounts to the plaintiff. The defendant's second argument is that the present case is factually similar to *Garrigus* v. *Viarengo*, supra, 112 Conn. App. 655, and that it was improper for the court to rely on *State* v. *Lavigne*, 307 Conn. 592, 57 A.3d 332 (2012). The defendant's last two arguments are that the court erred by not finding that the plaintiff concealed the joint ownership of the accounts and that the court improperly weighed evidence concerning the decedent's intent.

A

The defendant argues that the court should have found that the plaintiff was in a confidential relationship with the decedent, shifting the burden of proof with regard to ownership of the accounts to the plaintiff.[6] The defendant's argument is predicated on portraying the decedent as a simple farmer, with little understanding of how to manage his personal finances, and inherently susceptible to the plaintiff's influence. The record, however, reveals a basis to conclude that this was not the case. First, the plaintiff's relationship with the decedent did not reflect the paradigms of a confidential

relationship. Second, the record demonstrates that the decedent may not have been as susceptible as the defendant contends; the decedent was capable of managing his financial affairs and there is evidence that the decedent understood the survivorship rights on joint accounts.

Determining whether a confidential relationship exists is a factual inquiry. *Albuquerque* v. *Albuquerque*, 42 Conn. App. 284, 287, 679 A.2d 962 (1996). Appellate review is limited to the clearly erroneous standard. Id.

The record contains evidence that the plaintiff's relationship with the decedent did not reflect the paradigms of a confidential relationship. "A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Dunham* v. *Dunham*, 204 Conn. 303, 322, 528 A.2d 1123 (1987), overruled in part on other grounds by *Santopietro* v. *New Haven*, 239 Conn. 207, 213 n.8, 682 A.2d 106 (1996). The superior position of the fiduciary or dominant party affords him a great opportunity for abuse of the confidence reposed in him. Id. "The relationship between a parent and a child does not per se give rise to the establishment of a fiduciary relationship." (Internal quotation mark omitted.) *Bunting* v. *Bunting*, supra, 60 Conn. App. 680. Here, there was evidence that the decedent did not wholly trust the plaintiff to manage his finances. The defendant referred to this in his testimony by stating that the decedent "would accuse . . . [the plaintiff] of stealing his money." There was evidence that the decedent monitored the plaintiff's management of his financial affairs. The plaintiff recalled that the decedent was aware of how much money the accounts contained[7] and scrutinized how the money was being spent, frequently questioning payments to parties he did not recognize.[8] Further, there was evidence that the decedent made the ultimate determination in the management of his financial affairs. According to the plaintiff, when she purchased a new car, it was the decedent who made the decision about which account the money would come from.[9]

The record contains a basis to support the court's finding that the decedent was capable of managing his financial affairs. The evidence reflects that the decedent—with help from Gloria Klee, family members, and friends—successfully operated a family farm for many years. In managing the farm, the decedent purportedly made purchases, sold farm products and services, bartered, and negotiated.[10] The plaintiff testified that the decedent annually visited Rockville Bank to renegotiate the interest rates on his composite deposit accounts.[11] Additionally, there was evidence that the decedent demonstrated an understanding of complex legal and financial documents. The decedent supposedly instructed

his attorney to change his will despite the plaintiff's protests.[12] The defendant recalled times when the decedent would execute contracts for mortgage liens and automobile sales.[13]

The evidence reasonably demonstrated that the decedent understood survivorship rights on a joint account, which supports the notion that the decedent was not as susceptible to the plaintiff's influence as the defendant represents. At trial, a representative from United Bank, Tracy Roy, explained that it is bank policy to inform anyone opening a joint account about the right of survivorship.[14] Additionally, a bank representative would give customers an informative booklet on joint account ownership. The booklet contains the following provision, "Joint Account—With Survivorship (And not as Tenants in Common)—is an account in the name of two or more persons (where the other person is not a fiduciary or beneficiary). Each of you intends that when you die the balance in the account (subject to any previous pledge to which we have agreed) will belong to the survivor(s)." The decedent should have received this information when he opened the accounts with the plaintiff. Additionally, the decedent, prior to opening joint accounts with the plaintiff, held joint accounts with Gloria Klee. The decedent gained firsthand experience dealing with survivorship rights when Gloria Klee died.[15]

B

The defendant's second argument is that the present case is factually similar to *Garrigus* v. *Viarengo*, supra, 112 Conn. App. 655, and that it was improper for the court to rely on *State* v. *Lavigne*, supra, 307 Conn. 592. In *Garrigus*, the executrix of the decedent's estate brought an action against the decedent's niece to recover funds in accounts held by the decedent and her niece. *Garrigus* v. *Viarengo*, supra, 660. The court found that by transferring the decedent's assets into the joint accounts, the niece committed fraud against the decedent's estate. Id., 671. The trial court in *Garrigus* found that shortly after the decedent's husband died, "the niece] transported [the decedent] to the bank, and the [niece's] name was added as a joint owner on savings bonds . . . ." Id., 665–66. A few months later, "the [niece] was added as a joint owner on several of [the decedent's] savings and checking accounts, certificates of deposit and savings bonds. . . . When a few relatives became aware that the [niece] was a joint owner on some of [the decedent's] bank accounts, they expressed their concern to [the decedent] that those accounts would belong to the [niece] when [the decedent] died. [The decedent] was adamant that the [niece's] name had been added for convenience only because the [niece] helped [the decedent] with her financial affairs and was the coexecutor of her will. [The decedent] indicated that she had told [her niece]

that her estate was to be divided equally among the ten beneficiaries." Id., 666. The court inferred that when faced with the decedent's instructions to split the estate evenly, the niece "remained silent" and that the decedent "undoubtedly assumed [her niece's] assent . . . ." Id., 669. In the present case, there was no finding that (1) the decedent created joint accounts with the plaintiff only for convenience purposes, (2) any of the other family members ever questioned him about his intent, or (3) he indicated that the money in the accounts was to be distributed equally to all his stated beneficiaries. Thus, we do not agree with the defendant that the present case is factually similar to *Garrigus*.

The court also did not err by citing to *State* v. *Lavigne*, supra, 307 Conn. 592. The court cited to *Lavigne* for the proposition that determining ownership of funds in a joint account is a factual issue in order to establish that it was the court's responsibility in the present case to make that determination as the finder of fact. Although *Lavigne* is a criminal case, § 36a-290 is discussed at length in our Supreme Court's decision. First, we observe that a court is free to look to any case that it believes is instructive in deciding the matter before it. Second, there is no basis on which to conclude that the court's reliance on *Lavigne* was misplaced because in *Lavigne,* our Supreme Court reviewed the "long-standing jurisprudence concerning § 36a-290 or its predecessor provision and other cases in which the ownership of joint bank accounts was at issue . . . ." Id., 601. The defendant's brief even contradicts itself in one instance by stating that the court erroneously relied on *Lavigne* and in another instance by stating that "the *Lavigne* case gives sufficiently relevant law to be the key case in this matter." (Internal quotation marks omitted.)

C

The defendant next argues that the court improperly failed to find that the plaintiff fraudulently concealed the beneficial effect of her survivorship rights in the joint accounts from her daughter, the decedent, and the decedent's attorney. It is not this court's role to examine the record to determine whether the trier of fact could have reached a different conclusion. *Wyszomierski* v. *Siracusa*, 290 Conn. 225, 238, 963 A.2d 943 (2009). Instead, this court reviews the trial record to determine whether the trial court's decisions are legally correct and factually supported. Id. The defendant is requesting that this court replace the trial court's findings of fact with a different narrative where the defendant is entitled to half the funds in the joint accounts. The record does not reveal the requisite compelling reasons to do so.

The defendant contends that the court improperly failed to find that the plaintiff concealed the survivorship nature of the joint bank accounts from the plain-

tiff's daughter, Attorney Ryan, and the decedent. The defendant does not establish why it was clearly erroneous for the court to fail to find that the plaintiff concealed the accounts. The plaintiff's alleged concealment of the survivorship rights of the accounts from her daughter is not material to the outcome of this case. There is contradictory testimony regarding whether the plaintiff concealed the survivorship rights from the decedent and Ryan; therefore, the trial court did not err by not finding that she did so.

The court did not act improperly by failing to find that the plaintiff concealed the survivorship nature of the accounts from her daughter. Courts do not need to include immaterial facts in their findings. *Yale University* v. *New Haven*, 169 Conn. 454, 463, 363 A.2d 1108 (1975). The defendant was "required to prove by clear and convincing evidence that the bank accounts . . . were not valid inter vivos gifts . . . or that they were assets acquired by the defendant under circumstances which required equity to divest [the plaintiff of her] beneficial interest and to convert [her] into a trustee in order to prevent [her] unjust enrichment." (Citations omitted.) *Cooper* v. *Cavallaro*, 2 Conn. App. 622, 626, 481 A.2d 101 (1984). The § 36a-290 (b) presumption focuses on the intent of the joint account holders. *State* v. *Lavigne*, supra, 307 Conn. 603. Whether the plaintiff informed her daughter about the survivorship nature of the accounts neither provides insight as to the decedent's intent, nor reveals anything about the relationship between the decedent and the plaintiff. The defendant does not proffer a reason why a finding that the plaintiff concealed her right of survivorship from her daughter would be material to the case. Further, the defendant needed to explain that failing to make such a finding would be impactful in light of the fact that the defendant needed to establish by clear and convincing evidence that equity required divesting the plaintiff of the accounts. Whether or not the court found the daughter's testimony credible, the court did not have to address this factual issue in its analysis.

With respect to Ryan and the decedent, although a finding that the plaintiff purposely concealed the survivorship nature of the accounts from them may have been material to the court's analysis, the defendant must establish on appeal that the court's failure to find that the plaintiff deceived either of them was clearly erroneous. The record contains contradictory testimony regarding whether the plaintiff had an opportunity to conceal the survivorship rights from Ryan and whether the decedent knew about the survivorship rights. "Where there is conflicting testimony, we do not retry the facts or pass upon the credibility of the witnesses. . . . Weighing the evidence and judging the credibility of the witnesses is solely within the province of the trial court and this court will not usurp that role." (Citation omitted.) *Hallmark of Farmington* v. *Roy*, 1

Conn. App. 278, 281, 471 A.2d 651 (1984). Also, the court was not required to credit any particular individual's account of the events. *Wilson* v. *Hryniewicz*, 51 Conn. App. 627, 633, 724 A.2d 531, cert. denied, 248 Conn. 904, 731 A.2d 310 (1999).

The defendant contends that the court erred by not finding that the plaintiff concealed the survivorship nature of the accounts from Ryan. The defendant alleges that the plaintiff concealed the survivorship nature when she brought the decedent to Ryan's office to amend his will in 2012. Ryan testified that the plaintiff sat in on the conference when the decedent discussed how he wanted to amend his will, but that the plaintiff did not actively participate in the conversation. Ryan stated that, aside from exchanging brief pleasantries, the plaintiff said little at the meeting[16] and that although there was a terse discussion of the decedent's assets, the decedent brought the conversation to an abrupt end. The plaintiff testified that she was asked to leave the room after briefly greeting Ryan.[17] The court was left to evaluate contradictory testimony that the plaintiff did not attend the meeting against evidence that she was not an active participant. The court was free to assign credibility to either account. Therefore, it was not clearly erroneous for the court to fail to find that the plaintiff concealed the right of survivorship from Ryan.

The defendant relies on his own testimony to argue[18] that the plaintiff concealed the right of survivorship from the decedent. The defendant testified that the decedent was confused as to why the plaintiff's name was on the accounts and that despite arguments between the plaintiff and the decedent regarding finances, the decedent never took the plaintiff's name off the accounts.[19] The plaintiff testified that her name was on the accounts as a joint owner because her parents wanted her to have the money in the accounts.[20] Again, the court was left to evaluate contradictory testimony. The plaintiff's testimony provided evidence that she did not conceal the survivorship rights from the decedent, and the court was free to credit that testimony. Therefore, it was not clearly erroneous for the court to fail to find that she concealed the survivorship rights on the accounts.

D

The defendant's final argument is that the court failed to give proper weight to evidence concerning the decedent's intent. As previously explained, the existence of a joint account creates a presumption that the decedent intended the joint account to become the property of the surviving account holder(s). This presumption can be overcome only with clear and convincing evidence. *Garrigus* v. *Viarengo*, supra, 112 Conn. App. 662. Nothing in the court's decision suggests that the court failed to consider whether the presumption was overcome or any of the relevant evidence on the issue. The court

noted that "[i]t is true that the state of the evidence in this case is a bit contradictory. On the one hand, we have the incontrovertible evidence that the decedent created these joint accounts with himself and [the plaintiff]. Examined in a vacuum, this seems to clearly show that he intended to have ownership of the totality of the $400,000 vest in [the plaintiff] upon his death (after all, that is the general meaning of a joint account). On the other hand, there is the clearly contradictory stated intent in his last will and testament—that the residuary of [the decedent's] estate is to be equally divided between [the plaintiff and the defendant]." Therefore, the court weighed the evidence concerning the decedent's intent and decided that it did not clearly and convincingly overcome the presumption set forth in § 36a-290 (b).

II

The defendant also claims that the court abused its discretion by reinstating the plaintiff as the executrix of the decedent's estate. The defendant argues that, by undervaluing certain assets in the inventory of the decedent's estate, the plaintiff failed to perform adequately her duties as executrix. We disagree.

The property at issue was a tractor and two vehicles—an automobile and a dump truck. The defendant supports this claim by arguing that his own testimony contradicts the plaintiff's valuations and that the plaintiff, by her own admission, initially confused the value of the two vehicles. The court observed that "[d]espite there being some allegations that the plaintiff did not perform her job properly, this court cannot find that the decisions she made as executrix, the valuations she placed upon the property in the inventories, were unsupported by evidence."

Removal of an executrix is left to the sound discretion of the Probate Court. *Ramsdell* v. *Union Trust Co.*, 202 Conn. 57, 65, 519 A.2d 1185 (1987). "On appeal from probate, the trial court may exercise the same discretion de novo, reviewing the facts relating to the propriety of removal without regard to the Probate Court's decision." Id. That leaves this court to determine whether the decision of the trial court amounts to an abuse of discretion. "Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Selene Finance, L.P.* v. *Tornatore*, 137 Conn. App. 130, 134, 46 A.3d 1070, cert. denied, 307 Conn. 908, 53 A.3d 223 (2012).

The record reveals that the plaintiff and the defendant

presented the court with conflicting values of the assets. The plaintiff valued the tractor at $12,000, the automobile at $4000, and the dump truck at $8000. The defendant, "a person who deals in automotive transactions," appraised the automobile at $12,088. The defendant estimated, on the basis of the National Auto Dealers Association blue book, that the dump truck was worth $15,413. Scott Stanton, the tractor dealer who sold and repaired the decedent's tractor, estimated that the tractor was worth $25,000 at the time of the decedent's death.

The defendant is essentially requesting that this court conclude that it was an abuse of discretion for the trial court to reinstate the plaintiff because of the higher estimated values of the assets that he, an interested party, and Stanton presented. Even though there was a difference between the defendant's appraisals and the plaintiff's valuations, the court acted within its discretion by reinstating the plaintiff as executrix. The values utilized by the plaintiff equal, or are close in value to, the town of Ellington's tax assessments on the assets, which were admitted as evidence. Therefore, after reviewing the record, we conclude that the court's decision to reinstate the plaintiff as the executrix was reasonable, supported by the record, and not an abuse of its discretion.

The judgments are affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Geci brought this appeal from probate both individually and in her representative capacity as executrix of the estate of the decedent, William F. Klee. She refers to herself as the plaintiff, as do we. The defendant, David Boor, is the decedent's grandson and a beneficiary of his will. John Henneberger, the administrator of the decedent's estate, was also named as a defendant but was defaulted for failure to plead and is not involved in this appeal. Our references in this opinion to the defendant are to Boor.

[2] Pursuant to the terms of the June 13, 2006 will, Frederick Klee's one-third share was to be devised to the plaintiff in trust for Frederick Klee.

[3] It is not disputed that both accounts had a right of survivorship.

[4] Pursuant to the terms of the June 13, 2006 will, Frederick Klee and Mascalla were to receive a one-third share in trust and a one-ninth share, respectively. The January 11, 2012 will removed Frederick Klee and Mascalla as beneficiaries of the decedent's residual estate. This left the plaintiff and defendant as the sole intended beneficiaries in the 2012 will, each receiving a one-half share of the residual estate.

[5] General Statutes § 36a-290 provides in relevant part: "(a) When a deposit account has been established at any bank, or a share account has been established at any Connecticut credit union or federal credit union, in the names of two or more natural persons and under such terms as to be paid to any one of them, or to the survivor or survivors of them, such account is deemed a joint account, and any part or all of the balance of such account, including any and all subsequent deposits or additions made thereto, may be paid to any of such persons during the lifetime of all of them or to the survivor or any of the survivors of such persons after the death of one or more of them. Any such payment constitutes a valid and sufficient release and discharge of such bank, Connecticut credit union or federal credit union, or its successor, as to all payments so made.

"(b) The establishment of a deposit account or share account which is a joint account under subsection (a) of this section is, in the absence of fraud or undue influence, or other clear and convincing evidence to the contrary, prima facie evidence of the intention of all of the named owners thereof to

vest title to such account, including all subsequent deposits and additions made thereto, in such survivor or survivors, in any action or proceeding between any two or more of the depositors, respecting the ownership of such account or its proceeds. . . .”

[6] Although it is not explicitly stated in the defendant's brief, the defendant also seems to be arguing that the burden of establishing ownership should have been on the plaintiff because she fraudulently concealed her right of survivorship or, more generally, that she otherwise exerted undue influence on the decedent.

[7] The plaintiff testified: “When the bank statements came in every month, [the decedent] would open up the statements, and he'd look, and his first question was how much money's in there . . . .” The plaintiff would reply, “I don't know, dad. You got to add it up. . . . I'd say, dad, you've got to get a piece of paper, start adding them up.”

[8] The plaintiff testified: “Sometimes [the decedent] didn't recognize the names of places that I mailed a check to, and he would [say], what's this check for, what's this check for, and I would tell him.”

[9] The plaintiff testified: “I gave him the options of what . . . he had, and he said, I want to take it out of John Hancock. He did not want to touch the [joint accounts]. This was in November. He just renegotiated them in July. He was afraid he would lose his rate or interest [on the composite deposit accounts].”

[10] James Prichard, owner of the hardware store that the decedent frequented, testified: “I would buy egg cartons, shavings [from the decedent]. We would trade eggs back and forth . . . .” Prichard also recalled negotiating with the decedent: “I told him the price [for a wood stove]. He'd say it was too high, and then I'd sell it to him for close to what it cost me.”

[11] The plaintiff testified: “Every July, because that's when the . . . [composite deposit accounts] came due, we would go to the bank together, and he would talk to the lady about the interest rates, and he would renegotiate them.”

[12] The plaintiff testified: “I didn't agree with it, but I wasn't really sure about it, and once my dad heard that . . . [if Freddy goes into a convalescent home, the government can get your money], he decided to go up and take Freddy out of [the] will. I was quite against it.”

[13] The defendant testified that the decedent entered into contracts to purchase automobiles and signed his will. The defendant also secured mortgage financing from the decedent, and the decedent was a signatory on the mortgage release agreement, which was signed before a notary.

[14] Roy, a manager of two branches for United Bank, testified in response to questioning regarding the process of opening an account: “I would identify each customer . . . go over, if it's a joint account, what a joint account means; all of our joint accounts are with right to survivorship and not tenants in common, which means either of the parties, either account holder has full access to the funds. It is 100 percent owner A and 100 percent owner B's money. They do not need each other's permission to conduct any transaction on the account. Upon the death of one joint account holder, the surviving holder becomes the sole owner of the money.”

[15] Ryan testified that “[a]pparently,” the decedent was aware of the survivorship nature of joint bank accounts in March, 2007.

[16] Ryan testified: “My recollection is that [the plaintiff] had brought [the decedent] to the office. She did sit [in] on the conference [to discuss amending the decedent's will]. I don't remember her contributing to the conference or the discussion at all other than to say hi, the normal greeting kind of discussion. Specifically, I do not believe she contributed or commented upon [the decedent's] expressed desire.”

[17] The plaintiff testified: “[The decedent] said he wanted to change the will, and . . . Ryan sat down with him, and [Ryan] asked me to walk out of the room so he could talk to [the decedent], and I sat in the lobby.”

[18] The defendant also refers to the lack of anyone from Rockville Bank testifying about the decedent opening the accounts with the plaintiff in support of a finding that the plaintiff concealed the right of survivorship. This is a speculative proposition and ignores the possibility that the bank employees cannot accurately recall every patron who opens a new account.

[19] In arguing that the plaintiff concealed the right of survivorship on the accounts from the decedent, the defendant relies on his own testimony, which, rather than supporting his claim that the plaintiff concealed the survivorship rights from the decedent, reveals the opposite, mainly that the decedent was aware that the plaintiff's name was on the accounts. The defendant testified that the decedent was aware the plaintiff was listed on

the account and contemplated removing her, but never did so. The defendant testified that "[a]ll [the plaintiff] would say [to the decedent] is, go to the bank and take my name off." "One time after . . . [the plaintiff and the decedent] had an argument about [the accounts], he asked me to take him to the bank to find out why her name was on it, whose money it was, and I flat out refused."

[20] During the plaintiff's direct examination, the following colloquy occurred:

"[The Plaintiff's Counsel]: And whose money was it [in the accounts] . . . upon [the decedent's] passing?

"[The Plaintiff]: Mine.

"[The Plaintiff's Counsel]: And why you do you say that . . . ?

"[The Plaintiff]: Because that's what my mom and dad wanted—was for me to have the money [in the accounts] upon their death."

————————————————